115 P.3d 368 (2005)
STATE of Washington, Respondent,
v.
Jason Allan SANFORD, Appellant.
No. 31458-4-II.
Court of Appeals of Washington, Division 2.
July 7, 2005.
*369 Linda J. King, Attorney at Law, Tacoma, WA, for Appellant.
Donna Yumiko Masumoto, Attorney at Law, Pierce Co. Prosc Atty. Office, Tacoma, WA, for Respondent.
HUNT, J.
¶ 1 Jason Sanford appeals his conviction and sentence for fourth degree assault domestic violence against his children's mother. He argues that the trial court erred in (1) admitting evidence that police looked at his booking photo before arresting him and (2) imposing probationary conditions requiring that his contact with his children be supervised.
¶ 2 Holding that the trial court erred in allowing the booking photo testimony under ER 404(b), we reverse Sanford's conviction. In the event that Sanford is convicted and sentenced following retrial, we hold that the trial court has no power under the circumstances of this criminal case to restrict Sanford's contact with his children.

FACTS

I. THE ASSAULT
¶ 3 Jesica Spray and her two young children were at home, where they had been living with Jason Sanford, the children's father. On this day, however, he was staying with his mother because he and Spray were having relationship problems. Spray gave Sanford permission to come over to the house "if he didn't act stupid."
¶ 4 Sanford entered the home through the window, the usual method of ingress, because he and Spray lacked keys to the locks on the doors. According to Spray, (1) Sanford charged and started hitting her; (2) she estimated he struck her 20 times, but she could not recall where on her body he had hit her; (3) the children were in their room; (4) she did not know whether the children witnessed the assault; (5) she did not remember the children crying or exhibiting symptoms of distress; and (6) Sanford left when Spray told him she was going to call the police. According to Sanford, he held Spray down to prevent her from striking him after she first assaulted him.
¶ 5 When the police arrived, Spray described the events to Officer Jason Tait. She told him that Sanford might be at another residence, for which she did not know the address, and she described Sanford's vehicle. According to Officer Tait, Spray appeared calm, she lacked visible injuries, and she admitted that she had a bad temper and she had been upset when Sanford moved out to stay with his mother.
*370 ¶ 6 Officer Tait and another officer left the home to contact Sanford in the area Spray had described. Officer Tait located the vehicle Spray had described and knocked on the door of a home nearby. Sanford answered the door. When Officer Tait asked if anyone named "Sanford" was at home, Sanford answered, "No," and told Officer Tait that he was "Chris Smith."
¶ 7 In an attempt to identify Sanford, Officer Tait and his partner returned to their patrol car to use its computer to view booking photos. They accessed a photo associated with the name "Jason Sanford," confirmed that the photo looked like the person claiming to be Chris Smith, returned to the house, knocked on the door, and arrested Sanford when he answered and admitted that his name was Jason Sanford.

II. PROCEDURE
¶ 8 The State charged Sanford with first degree burglary, fourth degree assault, and interfering with domestic violence reporting.
¶ 9 At trial, Sanford objected to Officer Tait's mention of the booking photo, arguing that it was evidence of prior misconduct inadmissible under ER 404(b). The State countered that the booking photo was admissible to show Sanford's identity and guilty conscience. Sanford rejoined that his identity was not in issue and that his "guilty conscience" was relevant only to his having given a false name, which he admitted.
¶ 10 The trial court admitted the booking photo, reasoning that (1) the booking photo linked Sanford to the charged crime by showing his identity; and (2) his identity was in issue on October 19, 2003, and during part of the subsequent investigation. Noting that the booking photo might imply Sanford's prior misconduct, however, the trial court ruled that the State could not specify any crime associated with the booking photo.
¶ 11 A jury found Sanford guilty of fourth degree assault. It acquitted him of the other charges.
¶ 12 Spray appeared at Sanford's sentencing. She objected to additional jail time for Sanford and to entry of a no-contact order because their son "misse[d] his dad." Spray denied knowing whether their son had witnessed the incident, but the trial court stated, "Probably he did." The court imposed a suspended sentence of 365 days in jail with credit for time served. As a condition of Sanford's suspended sentence, the court ordered a two-year probationary condition limiting Sanford to supervised contact with his children and requiring his compliance with a no-contact order for Spray.
¶ 13 Sanford appeals.

ANALYSIS

I. BOOKING PHOTOGRAPH

A. Standard of Review
¶ 14 Admission of evidence is within the trial court's sound discretion, which we will not disturb on review absent a showing of abuse. State v. Stubsjoen, 48 Wash.App. 139, 147, 738 P.2d 306, review denied, 108 Wash.2d 1033 (1987). Abuse occurs when the trial court's discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). The appellant bears the burden of proving abuse of discretion. State v. Hentz, 32 Wash.App. 186, 190, 647 P.2d 39 (1982), reversed on other grounds, 99 Wash.2d 538, 663 P.2d 476 (1983).
¶ 15 Erroneous admission of evidence is not grounds for reversal "unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981).
In determining whether evidence of other crimes, wrongs, or acts was properly admitted under ER 404(b), the court first must analyze whether the evidence is logically relevant to prove an "essential ingredient" of the charged crime rather than simply to show the defendant had a propensity to act in a certain manner which he followed on that particular occasion. Second, the court must determine whether the evidence of other criminal acts is legally relevant, i.e., whether the probative value of the evidence is substantially outweighed *371 by its prejudicial effect. Third, if the evidence is admitted, the court must limit the purpose for which it may be considered by the jury. Whether the proffered evidence meets the above criteria is a discretionary determination made by the trial court; its decision will not be overturned absent a manifest abuse of discretion.
State v. Bowen, 48 Wash.App. 187, 190, 738 P.2d 316 (1987) (overruled on other grounds) (citations omitted).

B. Identity
¶ 16 Sanford argues that the trial court's admission of the booking photo to prove his identity under ER 404(b)[1] was a manifest abuse of discretion because his identity was not a material issue at trial.[2] We agree.
¶ 17 Evidence of prior misconduct is admissible to prove identity only if identity is actually at issue. Bowen, 48 Wash.App. at 193, 738 P.2d 316 (identity was not at issue in prosecution of physician for indecent liberties because defendant did not claim mistaken identity; he simply denied the charged acts). See also 5D KARL B. TEGLAND, COURTROOM HANDBOOK ON WASHINGTON EVIDENCE ch.5, at 225 (2005). In addition, to be admissible under ER 404(b), the prior misconduct must, in some tangible way, link the defendant to the crime charged. TEGLAND, Supra, at 225. Neither criterion is met here.
¶ 18 As in Bowen, Sanford did not challenge his identity by claiming that police had the wrong man. Rather, he admitted that he had been involved in a fight with Spray, but he simply denied that he had assaulted her He did not object to the arresting officer's testimony about Sanford's initially having given the police a false name and his subsequent admission that he was, in fact, Jason Sanford. Under these circumstances, we fail to see how referring to a prior arrest through evidence of a booking photos linked Sanford to the charged assault.
¶ 19 We have previously recognized that referring to booking photos may raise a prejudicial inference of criminal propensity. State v. Henderson, 100 Wash.App. 794, 803, 998 P.2d 907 (2000) ("[M]ug shots from a police department `rogues gallery' are generally indicative of past criminal conduct and will likely create in the minds of the jurors an inference of such behavior." (quoting United States v. Fosher, 568 F.2d 207, 213 (1st Cir.1978))). Existence of Sanford's booking photo in the police system created a similar improper inference of his past criminal conduct. That the trial court attempted to minimize prejudice to Sanford by prohibiting questions and answers identifying "any crime associated with those booking photographs" does not erase the prejudice created by the fact that Sanford's booking photo was in the police computer system, which clearly implied that he had previously been arrested for some other crime. See Henderson, 100 Wash.App. at 803, 998 P.2d 907.
¶ 20 Moreover, Sanford admitted that he had been in an altercation with Spray; thus, his identity was not in issue at trial, and the booking photo was totally unnecessary to link Sanford with the charged assault.[3]
¶ 21 We hold, therefore, that the trial court committed reversible error in admitting Officer Tait's testimony that he viewed Sanford's *372 police computer booking photograph before arresting him.

C. Consciousness of Guilt
¶ 22 The State also argues that the booking photo testimony demonstrated Sanford's consciousness of guilt. We disagree. First, when he did not object to admission of this evidence, Sanford essentially conceded that he had provided police with a false name. Thus, there was already evidence in the record from which the State could argue to the jury that Sanford's use of a false name implied guilty consciousness. The booking photo had no bearing on this issue. Accordingly, there was no valid reason to expose the jury to the prejudice of Sanford's criminal propensity that Sanford's prior police computer booking photo implied.

D. Prejudicial Error
¶ 23 Nor do we find the introduction of the booking photo to be harmless error. "[I]mproper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997). Here, the evidence of Sanford's assault against Spray is not overwhelming, thus, amplifying the prejudice that improper admission of the booking photo created.
¶ 24 Spray's ambiguous testimony conflicted somewhat with Officer Tait's report of the incident. Her estimate that Sanford struck her 20 times is somewhat mitigated by Officer Tait's testimony that, upon his arrival, Spray appeared calm and she had no visible injuries. Furthermore, Spray could not remember exactly where Sanford had hit her, in spite of her claim of 20 strikes. Nor did Spray experience any pain immediately after the incident or in the following days.
¶ 25 Spray's testimony also tended to support Sanford's version of the events, namely that Spray assaulted him first and that he held her down to prevent her from striking him again. In addition, Spray admitted that she had a bad temper and that she was upset when Sanford had moved out to stay with his mother.
¶ 26 On the record before us, we cannot say that, in the absence of the improperly admitted booking photo, Spray's testimony provided overwhelming evidence sufficient to convict Sanford of fourth degree assault. Accordingly, we reverse Sanford's conviction.

II. PROBATIONARY CONDITIONS AND SUSPENDED SENTENCE
¶ 27 Sanford next argues that the trial court erred when, in sentencing, (1) it restricted him to supervised contact with his children, in violation of his fundamental right to parent, and (2) improperly imposed probationary conditions even though it did not suspend his sentence. Because the restriction on his contact with his children may arise again if Sanford is convicted and resentenced on remand, we address this issue now.
¶ 28 "The fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children." State v. Ancira, 107 Wash.App. 650, 654, 27 P.3d 1246 (2001). In Ancira, the court reviewed a no-contact order prohibiting the defendant from contacting his two minor children as a condition of his sentence for violating an order prohibiting contact with his wife. The court held that this condition violated Ancira's fundamental right to parent because the restriction was not reasonably necessary to protect the children from witnessing domestic violence between the parents. Ancira, 107 Wash.App. at 656, 27 P.3d 1246. Nonetheless, the court further noted, "Generally, however, the criminal sentencing court is not the proper forum to address these legitimate concerns other than on a transitory basis." Ancira, 107 Wash.App. at 655, 27 P.3d 1246. See also State v. Letourneau, 100 Wash.App. 424, 443, 997 P.2d 436 (2000) (noting that family and juvenile courts are "more appropriate forums than the criminal sentencing process to address the best interests of dependent children with respect to most visitation issues.").
¶ 29 Here, Spray testified that the children had been in another bedroom and probably did not know about, hear, or see the assault. Furthermore, there are absolutely no allegations that Sanford ever committed or threatened *373 any violence against the children. And the record before us does not show that restricting Sanford to supervised visits with his children is reasonably necessary to protect them from witnessing domestic violence between their parents. See Ancira, 107 Wash.App. at 656, 27 P.3d 1246. Accordingly, we hold that the trial court erred in restricting Sanford to supervised visitation with his children as a condition of his sentence.
¶ 30 Reversed and remanded for a new trial.
We concur: ARMSTRONG, P.J., and VAN DEREN, J.
NOTES
[1] ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake or accident.
(Emphasis added.)
[2] The State argued to the trial court: "I'm not offering any other information other than it was a booking photo in the computer system, not what he was booked for or when he was booked or anything like that." Report of Proceeding at 81 (emphasis added).
[3] Rather, the booking photo merely showed how the officers were able to confirm Sanford's true identity at the time of his arrest, at which point Sanford admitted his real name. Furthermore, the State did not need to elicit testimony about the police computer booking photo to show that Sanford changed from giving a false name to his correct name: For example, the State's witness could have testified simply that, after confronting Sanford with additional information showing he had given them a false name, Sanford admitted his true identity.