FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 47

STATE OF WASHINGTON
BY____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON | No. 44528-0-II |
| Respondent, | |
| v. | |
| KAREN ELIZABETH LOFGREN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Karen Elizabeth Lofgren appeals the lifetime no-contact orders barring all contact with her children that were imposed as conditions of sentence after she pleaded guilty to solicitation to commit second degree murder. In a pro se statement of additional grounds (SAG), Lofgren also challenges the length of her standard range sentence. Lofgren cannot appeal the length of her sentence; therefore, we affirm her sentence. But, because neither the scope nor the duration of the no-contact orders were reasonably necessary to protect her children, we remand for the trial court to vacate the lifetime no-contact orders with the children as a condition of her sentence.

FACTS

Lofgren married Todd Hardin in 2002. The couple's two daughters were born in 2003 and 2006. Lofgren filed for divorce in 2010, but she had that petition dismissed after the couple reconciled. Hardin filed a second dissolution petition in 2011.

While the dissolution proceedings were pending, Lofgren asked an acquaintance, Darrell Burgess, to hire someone to kill Hardin. Burgess reported this to his probation officer, who

contacted Pierce County law enforcement. Using court-authorized surveillance, detectives recorded conversations between Lofgren and Burgess, as well as conversations between Lofgren and an undercover officer posing as the "hit man." Clerk's Papers (CP) at 3-4. During one conversation, Lofgren referred several times to the need to protect her children from Hardin. During another conversation, when the officer asked about Hardin's schedule, Lofgren disclosed that Hardin volunteered at the girls' school and identified both the school and the times that he was there. She was insistent that the girls should not be around when any violence occurred.

The State charged Lofgren in the alternative with conspiracy to commit first degree murder and solicitation to commit first degree murder. Lofgren agreed to plead guilty to an amended charge of solicitation to commit second degree murder.

In its sentencing memorandum, the State recommended a high-end standard range sentence of 165 months, as well as no-contact orders preventing Lofgren from contacting her children and Hardin. The defense memorandum sought a sentence either below or at the low end of the standard range. The defense submitted 55 letters supporting its request for leniency. Lofgren was released on bail pending sentencing, and one condition of release was that she have no contact with Hardin or her daughters.

Hardin spoke at the sentencing hearing and stated that he and his children would never be safe because Lofgren would always be a danger to them. He also described the broader impact of Lofgren's actions:

> My children's private school has been on high alert while Karen Lofgren has been out of jail. Many parents have expressed fear that Ms. Lofgren might show up and do something unthinkable to my children in a vindictive attempt to get to me, and I share those concerns. She is capable of anything. She even informed the hit man of where my girls go to school when she told him that I

volunteered for their class, giving him the time and the name of the school. I lobbied hard for my children to be able to return to this school so that my girls' lives wouldn't be further disrupted by the wake having been left by Ms. Lofgren. It was only because of the no-contact order preventing her from seeing the children that they were allowed to remain in this private Christian school.

Report of Proceedings (RP) (Jan. 25, 2014) at 17. Hardin ended his statement as follows: "I beg you to keep the no-contact order in place so that my children and I will, at least, have a chance at some sort of normal life." RP (Jan. 25, 2014) at 18.

The State argued that no-contact orders between Lofgren and her children were necessary because Lofgren had placed the children at risk by giving the undercover officer information about their school and schedules. The defense responded that no-contact orders involving the children were not appropriate because Lofgren had been trying to protect rather than harm her daughters.

The trial court imposed a high-end standard range sentence of 165 months and then addressed the no-contact orders:

> The Court is going to order a no-contact order with the children. I did that in the last case when it was the man sitting there having killed the woman, the mother of his children; so I don't see that I can legitimately say that she is entitled to have custody where she tried to have her children's father killed and would not hold the man accountable. I don't have a double standard here. She tried to have her children's father killed. The burden that would have been placed on those children was immense, if she had managed to succeed in that plan. To lose a parent when you're a small child—I had friends who lost a parent. It is with them forever; and to have to live with the fact that your mother paid someone to kill your father would be a burden that I would place on no child, and she chose that line. She chose to do it. She wasn't isolated. She has a huge support system of friends and family. She had a very good attorney. If she was feeling stressed, he would have set her up in the appropriate counseling. She's an educated woman. This isn't a woman who dropped out of school at 13 or 14 to have children who had no education and no job skills. If I was sitting here, and this was the man, and he tried to have someone kill his wife, he would be looking at the same sentence. There just isn't a double standard here, so no contact with the children.

3

No. 44528-0-II

When they're 18, they can decide whether or not they want to have contact with their mother, but that would be their decision when they are adults.

RP (Jan. 25, 2014) at 51-52.

The court then imposed no-contact orders barring Lofgren from having contact of any kind with Hardin and the children for life as a sentencing condition. On appeal, Lofgren challenges the no-contact orders concerning her children, as well as the length of her sentence.

ANALYSIS

A. NO-CONTACT ORDERS

Lofgren argues initially that the no-contact orders barring her from all contact with her children for life are constitutionally and statutorily invalid.

The Sentencing Reform Act of 1981 authorizes a trial court to impose crime-related prohibitions for a term of the maximum sentence to a crime, independent of any community custody conditions. RCW 9.94A.505(8); *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime" and may include no-contact orders. RCW 9.94A.030(10); *State v. Armendariz*, 160 Wn.2d 106, 120, 156 P.3d 201 (2007). A causal link between the condition imposed and the crime committed is not necessary as long as the condition relates to the crime's circumstances. *State v. Llamas-Villa*, 67 Wn. App. 448, 456, 836 P.2d 239 (1992).

We review such sentencing conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). "'A court abuses its discretion if, when imposing a crime-related prohibition, it applies the wrong legal standard.'" *State v. Howard*, No. 32157-6-III, 2014 WL

4

2864397, at *4 (Wash. Ct. App. June 24, 2014) (quoting *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010)).

Careful review is required when sentencing conditions interfere with a fundamental constitutional right. *Warren*, 165 Wn.2d at 32. Parents have a fundamental liberty interest in the care, custody, and companionship of their children. *Warren*, 165 Wn.2d at 34; *Howard*, 2014 WL 2864397, *4. This fundamental right to parent can be restricted by a condition of a criminal sentence only if that condition is reasonably necessary to prevent harm to the children. *State v. Ancira*, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). This "reasonable necessity" requirement involves an interplay of sentencing conditions and fundamental rights that is "delicate and fact-specific." *Rainey*, 168 Wn.2d at 377; *see also Warren*, 165 Wn.2d at 32 (conditions that interfere with fundamental rights must be reasonably necessary to accomplish the essential needs of the State and public order, and they must be sensitively imposed). To survive scrutiny, both the scope and duration of a no-contact order affecting a defendant's parental rights must be reasonably necessary. *Rainey*, 168 Wn.2d at 381.

Lofgren cites three cases where far less restrictive orders than those at issue here did not satisfy the reasonable necessity requirement. In *State v. Letourneau*, 100 Wn. App. 424, 997 P.2d 436 (2000), a defendant who pleaded guilty to second degree child rape successfully challenged the scope of a sentencing condition prohibiting her from having unsupervised contact with her biological minor children after her release from prison. Division One concluded that the State had failed to demonstrate that allowing the defendant only supervised contact with her children was reasonably necessary to protect them from the harm of sexual molestation by their mother. *Letourneau*, 100 Wn. App. at 441. The defendant had not molested her own children,

5

and there was no evidence that she was a pedophile. *Letourneau*, 100 Wn. App. at 442. Consequently, allowing the defendant only supervised contact with her children following her release unconstitutionally infringed on her right to raise those children without State interference. *Letourneau*, 100 Wn. App. at 438, 442.

Division One found a similar infringement in *Ancira*, where the trial court imposed a no-contact order prohibiting the defendant from contacting his children after he was convicted of violating a no-contact order requiring him to stay away from his wife. 107 Wn. App. at 652-53. The trial court was trying to protect the children from witnessing further violence, but Division One concluded that the resulting no-contact order was not reasonably necessary to achieve this goal: "The State has not explained why prohibiting Ancira from contacting his wife would not protect the children from the harm of witnessing domestic violence between their parents." *Ancira*, 107 Wn. App. at 655. Prohibiting the defendant from all contact with his children for the five-year maximum term was "extreme and unreasonable given the fundamental rights involved." *Ancira*, 107 Wn. App. at 655.

Finally, where a defendant was convicted of assaulting his children's mother, a subsequent restriction allowing him only supervised contact with the children violated his fundamental right to parent. *State v. Sanford*, 128 Wn. App. 280, 288, 115 P.3d 368 (2005). The children did not know about, see, or hear the assault, and there were no allegations that the defendant had ever committed or threatened any violence against them. *Sanford*, 128 Wn. App. at 289. Accordingly, the trial court erred in restricting the defendant to supervised visitation with his children as a condition of sentence. *Sanford*, 128 Wn. App. at 289.

6

In contrast to the cases cited above, courts have upheld no-contact orders involving a defendant's children where the children were either victims of the crimes for which the defendant was being sentenced or within the same class as the victim. In *Rainey*, the daughter who was the subject of the no-contact order was the victim of the current kidnapping conviction. 168 Wn.2d at 379. In addition, the defendant had a history of involving his daughter in attempts to gain leverage over his ex-wife and to harass her. *Rainey*, 168 Wn.2d at 379-80. The scope of the resulting order limiting the defendant's contact with his daughter was necessary to protect the child from additional harm. *Rainey*, 168 Wn.2d at 380. And, in two cases where defendants were convicted of sexually abusing children within their households, the resulting restrictions on contact with their biological children did not constitute an abuse of discretion. *State v. Corbett*, 158 Wn. App. 576, 600, 242 P.3d 52 (2010); *State v. Berg*, 147 Wn. App. 923, 941-44, 198 P.3d 529 (2008), *abrogated on other grounds, State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). As we observed in *Corbett*, the no-contact order restricting the defendant's contact with his biological children was directly related to his crime because the children fell within the class of persons he had victimized. 158 Wn. App. at 601. In each case, the restricted contact was necessary to protect the other children from a risk of similar harm. *Corbett*, 158 Wn. App. at 600; *Berg*, 147 Wn. App. at 944.

Here, the defendant's children were neither the direct victims of her offense nor within the same class as Hardin, her victim. The State nonetheless argued below that a lifetime ban on contact with the children was necessary to protect them as well as Hardin. The State reminded the trial court that Lofgren had revealed the name of her daughters' school and their schedules to the undercover officer. The State did not add that Lofgren also told the officer that she did not

want the children involved in any violence, nor did it cite her repeated assertions in other conversations that she was trying to protect her children. On appeal, the State again points to Lofgren's disclosure of the school information. The State maintains that allowing Lofgren contact with her children will permit her to gain information about Hardin's whereabouts that she can reveal to potential assassins, thereby placing her children within the "line of fire." Br. of Resp't at 16. The State also argues that without these orders, the children may have to change schools.

These speculative claims of harm do not show that the restrictive orders at issue are reasonably necessary to protect the children. Moreover, there is no indication that these orders were delicately or sensitively drawn. *See Warren*, 165 Wn.2d at 34 (crime-related prohibitions affecting fundamental rights must be narrowly construed). The trial court referred neither to the need to protect the children nor to the impact on Lofgren's constitutional rights when it imposed the orders at issue.

We also take issue with the duration of the no-contact orders. *See Rainey*, 168 Wn.2d at 381 (restriction's length, as well as scope, must be reasonably necessary). Although the trial court stated during sentencing that the children could consider contact with Lofgren when they turned 18, the no-contact orders were imposed for life, which is the maximum sentence possible for Lofgren's offense. RCW 9A.28.030(2); RCW 9A.28.020(3)(a); RCW 9A.20.021(1)(a). The State attempts to justify the lifetime duration as necessary to protect Hardin, but there is an unchallenged lifetime no-contact order in place that applies to him. Any additional protection afforded by a lifetime ban on contact between Lofgren and her children is not reasonably

necessary. *See Rainey*, 168 Wn.2d at 381-82 (rejecting lifetime ban on contact where the sentencing court provided no reason for duration).

We agree with Lofgren that the proper forum to resolve the issue of her contact with her children is the family court. As the court in *Letourneau* explained:

> The Legislature has provided more appropriate forums than the criminal sentencing process to address the best interests of dependent children with respect to most visitation issues—the family court in the case of marital dissolution and paternity issues, and the juvenile court in the case of dependency proceedings. . . . It is the business of the family and juvenile courts to address the best interests of minor children with respect to most other kinds of harm that could arise during visitation with a parent who has been convicted of a crime. . . . To that end, the family and juvenile courts have authority to appoint guardians ad litem to investigate the best interests of minor children and those courts have broad discretion to tailor orders that address the needs of children in ways that sentencing courts in criminal proceedings cannot.

100 Wn. App. at 443. And, when child visitation issues are addressed in the context of dissolution or dependency proceedings, there are statutory procedures in place that protect a parent's right to procedural due process where the fundamental right to parent is at stake. *Ancira*, 107 Wn. App. at 655-56.

In summary, we conclude that the lifetime orders barring Lofgren from all contact with her children were not reasonably necessary to protect the children from harm. The matter and manner of contact between the children and Lofgren is best resolved by the family court in the dissolution proceeding.[1]

---

[1] Moreover, our opinion does not preclude a court from issuing a no-contact order grounded on other statutory bases.

No. 44528-0-II

B. LENGTH OF SENTENCE

In her SAG, Lofgren asks us to modify the length of her sentence due to mitigating circumstances. The law is well settled that a defendant cannot appeal the length of a standard range sentence so long as the punishment falls within the correct sentencing range. RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Consequently, this sentencing challenge fails.

We affirm the length of Lofgren's standard range sentence. But, we remand for the trial court to vacate the lifetime no-contact orders with the children as a condition of her sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Hunt, J.

Bjorgen, A.C.J.