**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53724-9-II |
| Respondent, | |
| v. | |
| BEAU EDWARD NUGENT, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Beau E. Nugent was convicted of attempting to elude a pursuing police vehicle with a sentencing enhancement for endangering one or more persons and of unlawful possession of a controlled substance. Nugent appeals, arguing that there was insufficient evidence to prove that he endangered anyone besides himself and the pursuing police officers for the sentencing enhancement and that the trial court erred by imposing a requirement in the judgment and sentence that interest accrue on nonrestitution legal financial obligations (LFOs).[1]

In a supplemental brief, Nugent argues that his conviction for possession of a controlled substance should be vacated in light of our Supreme Court's decision in *State v. Blake*,[2] that he is entitled to resentencing for his conviction for attempting to elude without consideration of his prior

_____

[1] This case was heard on January 12, 2021. On March 5, 2021, before an opinion was issued, Nugent moved for permission to file a supplemental brief addressing our Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). We granted Nugent's motion and stayed this case pending supplemental briefing. Order (Mar. 16, 2021). We now lift that stay.

[2] 197 Wn.2d 170, 481 P.3d 521 (2021).

convictions for possession of a controlled substance, and that fees and costs associated with his conviction for possession of a controlled substance should be returned to him.

Nugent also submits a statement of additional grounds (SAG) in which he argues that he received ineffective assistance of counsel because his attorney led a witness to state that Nugent was in prison, the trial court erred by admitting an old booking photograph into evidence, there was insufficient evidence to prove that Nugent was the driver of the vehicle, and his appellate counsel was ineffective for failing to challenge the conviction.

We hold that there was sufficient evidence to prove that Nugent endangered individuals besides himself and the pursuing police officers. We also hold that Nugent's conviction for possession of a controlled substance should be reversed and that he should be resentenced on the attempting to elude a pursuing police vehicle conviction only. Nugent may raise his challenges to the legal financial obligations at his resentencing.

With regard to the SAG, we hold that Nugent did not receive ineffective assistance of counsel based on counsel's questioning of a witness, the trial court did not err by admitting an old booking photograph into evidence, and there was sufficient evidence to prove that Nugent was the driver of the vehicle. Finally, we decline to reach Nugent's claim alleging ineffective assistance of appellate counsel.

Accordingly, we affirm Nugent's conviction for attempting to elude a pursuing police vehicle, reverse Nugent's conviction for possession of a controlled substance, and remand to the trial court to vacate Nugent's conviction for possession of a controlled substance and for resentencing on the attempting to elude a pursuing police vehicle conviction only. Nugent may raise his challenges to the legal financial obligations at his resentencing.

FACTS

A.     BACKGROUND

On January 4, 2018, Nugent drove a vehicle on a trail parallel to Highway 101.  Dylan Helser, a deputy with the Mason County Sheriff's Office, saw Nugent, turned on his take down lights, and brought his vehicle nose to nose with Nugent's vehicle.  Nugent put the car in reverse and drove away from Deputy Helser, who pursued Nugent onto Highway 101.  Nugent, speeding on the highway, eventually hit the median, spun out, and started rolling the wrong direction on the highway.  Nugent got out of the car and ran into some bushes.  When Deputy Helser and another deputy looked inside the car, they found methamphetamine.

On April 24, 2019, the State charged Nugent by first amended information with one count of attempting to elude a pursuing police vehicle[3] with a sentencing enhancement for endangering one or more persons[4] and one count of unlawful possession of a controlled substance— methamphetamine.[5]

B.     JURY TRIAL

Deputy Helser was working routine patrol during the graveyard shift on January 4, 2018 at 10 p.m.  Deputy Helser was on West Manner Road, which runs parallel to Highway 101, and was traveling southbound when he saw vehicle lights coming towards him.  He started his take down lights and pulled up to approach the vehicle nose to nose because the vehicle was not supposed to

---

[3]  RCW 46.61.024.

[4]  RCW 9.94A.834; RCW 9.94A.533(11).

[5]  Former RCW 69.50.4013(1) (2017).

be there. Nugent "floored" his car in reverse while still looking forward. 1 Verbatim Report of Proceedings (VRP) (April 24, 2019) at 162. Nugent drove a long distance without turning around to see where he was going. Deputy Helser followed him, nose to nose. Nugent ended up leaving the trail and "[got] high centered up in some scotch broom against the tree." 1 VRP (April 24, 2019) at 162. Nugent then put his car in drive and continued southbound.

Deputy Helser began to chase Nugent on the trail, and Nugent was "still pedal to the metal fishtailing in the wet grass, [and] mud and stuff [was] flying everywhere." 1 VRP (April 24, 2019) at 162. On the trail, there were a couple of places where the trail dropped down steeply five or six feet to a driveway. Nugent hit one of those drops and "launche[d] completely airborne and [turned] sideways." 1 VRP (April 24, 2019) at 163. Nugent knocked over a phone box in the process. Nugent also

> hit[] a DOT sign, one of those big next exit lodging kind of thing. You know, it's a three six by six post or something on a big eight by eight sign or something and he—so he hit[] that sign, knock[ed] the sign or one of the posts out, continue[d] forward back down through the ditch and launche[d] up onto 101 and at that time traffic that was traveling southbound was seeing all this happening and having to stop and yield for him coming out onto 101.

1 VRP (April 24, 2019) at 163-64.

Deputy Helser then called Deputy Nathan Anderson from the Mason County Sheriff's Office to let him know that Nugent's vehicle was coming towards him. Deputy Anderson saw the vehicle come onto Highway 101 and pass right in front of him. The driver was driving "recklessly and dangerously" and at a far greater speed than the speed limit. 1 VRP (April 24, 2019) at 148.

Deputy Helser and Deputy Anderson chased Nugent down Highway 101. They were traveling southbound at 80 miles per hour, while the speed limit was 60 miles per hour. Nugent's

vehicle "lost control and tagged the center median guardrail and kind of spun out and ultimately ended up facing the wrong way on 101." 1 VRP (April 24, 2019) at 151. Nugent's vehicle started rolling southbound on the northbound side of the highway. There were quite a few vehicles that were traveling northbound that had to stop. Nugent exited the vehicle while the car kept rolling into northbound traffic. After Nugent exited the vehicle, Deputy Helser chased Nugent on foot until Nugent went into some bushes and Deputy Helser lost sight of him.

Deputy Helser looked inside Nugent's car and saw a small plastic baggy with a white crystalline substance, which he recognized as methamphetamine. Deputy Helser secured the substance to preserve the evidence and later sent it to the Washington State Patrol Crime Laboratory. The car that Nugent was driving was reported stolen on January 9.

Deputy Helser had no doubt in his mind that Nugent was driving. Deputy Helser could see the driver, Nugent, when their vehicles were nose to nose. Deputy Helser also saw Nugent's face when he was chasing Nugent on foot and Nugent looked over his shoulder at him.

In his report of the incident, Deputy Helser wrote that he observed a large tattoo on the driver's neck below the jawline of the driver. But Deputy Helser testified at trial that the tattoo was "somewhere in the area of [his] neck." 1 VRP (April 24, 2019) at 182. During trial, counsel asked Deputy Helser, "In the area that you're indicating on the left side of his neck just below the jawline do you see a tattoo on Mr. Nugent?" 1 VRP (April 24, 2019) at 189. Deputy Helser replied, "Not anymore I don't." 1 VRP (April 24, 2019) at 189.

The State moved to show Deputy Helser a booking photograph from a previous case, which showed Nugent's neck tattoo. The trial court found that the probative value of the picture

outweighed the prejudicial value because there had been testimony about the tattoo and its location

and whether the deputy could see it. The trial court ruled:

> [M]y determination is that the use of the single photograph, assuming it's properly
> cropped so that it doesn't overtly indicate that it's a booking photo or that it's based
> on arrest, is that the probative value outweighs the prejudicial value and I'll admit
> one photograph, the black and white, I think is more appropriate.

2 VRP (April 25, 2019) at 220. The trial court also ruled that it should not be referred to as a

booking photograph.

Deputy Helser testified that he had an opportunity to observe a known picture of Nugent.

When shown the picture, Deputy Helser noted that there was a tattoo on the left side of Nugent's

neck.

Martin McDermot, a forensic scientist at the Washington State Patrol Crime Laboratory,

testified that he received an evidence bag related to this case with contents he was to analyze.

After testing the contents, McDermot concluded that the substance was methamphetamine.

Carrie Hart, who was like an aunt to Nugent, testified that she had known Nugent since he

was a child. The testimony proceeded as follows:

> [Nugent's Attorney:] So, you've known him for a long time? Do you know where
> Mr. Nugent's residence is?
> [Hart:] His residence back then or now?
> [Nugent's attorney:] No, at this time or where it would be?
> [Hart:] It would be in prison.
> [Nugent's attorney:] No, no, I'm sorry.
> [Hart:] Oh, okay. I'm –
> [Nugent's attorney:] I try not to lead. Was Mr. Nugent your roommate?
> [Hart:] Yes, he was.

2 VRP (April 25, 2019) at 239. Hart also testified that on Thursday, January 4, 2018, Nugent

called her to say that he did not have enough gas in the car that she had loaned him to get back to

Bremerton from Shelton. Hart drove to Shelton and met Nugent at her son's house around 5 p.m. They left her car at her son's house, and Hart drove Nugent back to Bremerton. Hart and Nugent ate dinner and watched movies together. Nugent, who lived with her, stayed there that night. The following Saturday or Sunday, Hart's son called to ask if she had picked up the car because it was no longer at his home. Hart said that she had not. She called Nugent, and he stated that he had not picked it up. Hart went to the police station and reported the vehicle stolen.

## C.    VERDICT AND SENTENCING

The jury found Nugent guilty as charged. At a later hearing, Nugent argued that his attorney should have moved for a mistrial at the time that he led the witness into telling the jury that Nugent was already incarcerated and living in prison. Nugent also argued that the comment was very prejudicial and "the jury cannot unhear that, no matter how many times the Court says to disregard those comments." 2 VRP (May 13, 2019) at 307. The trial court responded, "I don't think from my observations, at that point, that [Nugent's attorney] did anything to lead her into saying that. I think he was just as surprised at the answer as I was, you were, everybody else." 2 VRP (May 13, 2019) at 308.

Nugent's offender score included 11 or 12 prior convictions, and two of the prior convictions were for unlawful possession of a controlled substance. During the sentencing hearing, the trial court took note of Nugent's criminal history immediately before announcing Nugent's sentence of 38 months confinement for the attempting to elude a pursuing police vehicle conviction, which included 12 months for the sentencing enhancement. The court also sentenced Nugent to 24 months for the possession of a controlled substance conviction. The court ordered that the sentences be served concurrently for a total of 38 months.

Nugent was further ordered to pay a $500 crime victim assessment fee. All other fines, fees, and costs were waived due to indigency. The judgment and sentence included the following provision: "The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090." Clerk's Papers (CP) at 60.

## ANALYSIS

### A. ENDANGERING ONE OR MORE PERSONS SENTENCING ENHANCEMENT

Nugent argues that there is insufficient evidence to prove that Nugent endangered any persons while attempting to elude the police as alleged in the sentencing enhancement. Nugent contends that there was no evidence that anyone other than Nugent and the police officers were on the road.

A challenge to the sufficiency of the evidence to convict is a constitutional question we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In reviewing a sufficiency of the evidence claim, we determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *Id.* We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

A person may receive an endangerment sentence enhancement in an attempting to elude a police vehicle case when sufficient admissible evidence exists to show that one or more

8

individuals, other than the defendant and the pursuing police officer, were threatened with physical injury or harm because of the defendant's actions. RCW 9.94A.834(1).

Here, viewing the evidence in the light most favorable to the State, Nugent's car launched up onto Highway 101 from the trail. The traffic that was traveling southbound saw Nugent and had to stop when he came onto the highway. Nugent drove 80 miles per hour while the speed limit was 60 miles per hour. Nugent's vehicle lost control, hit the center median guardrail, spun out, and ultimately faced the wrong way on Highway 101. VRP 151. His car slowly started rolling southbound towards northbound traffic. There were quite a few vehicles that were traveling northbound that had to stop. Nugent exited the vehicle and ran into some bushes, allowing the car to continue to roll.

From this evidence, a rational trier of fact could have found beyond a reasonable doubt that Nugent drove in a manner that endangered the drivers on Highway 101. Therefore, Nugent's insufficiency of the evidence argument fails.

B.    POSSESSION OF A CONTROLLED SUBSTANCE CONVICTION

Nugent argues that his conviction for possession of a controlled substance was based on a void statute and must be reversed. The State concedes that Nugent's conviction for possession of a controlled substance should be vacated. We agree.

Former RCW 69.50.4013(1) criminalized possession of controlled substances. In *Blake*, our Supreme Court held that former RCW 69.50.4013(1) is unconstitutional and void. 197 Wn.2d at 195. Convictions based on unconstitutional statutes must be vacated. *See id.* (vacating conviction based on unconstitutional drug possession statute).

9

Here, Nugent was convicted of possession of a controlled substance under former RCW 69.50.4013(1). Former RCW 69.50.4013(1) is void and unconstitutional. *Id.* Because convictions based on unconstitutional statutes must be vacated, we remand for the trial court to vacate Nugent's conviction and sentence for possession of a controlled substance. *See id.* (vacating conviction based on unconstitutional statute).

C.    PRIOR CONVICTIONS FOR POSSESSION OF A CONTROLLED SUBSTANCE

Nugent argues that he is entitled to resentencing on his conviction for attempting to elude a pursuing police vehicle because Nugent's prior criminal history included two prior convictions for possession of a controlled substance, which are unconstitutional.[6] We agree.

"[A] prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered" as part of a sentencing proceeding. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). In *Blake*, our Supreme Court held that former RCW 69.50.4013(1), the statute criminalizing simple possession, is unconstitutional and void. 197 Wn.2d at 195.

Here, Nugent's sentence for attempting to elude a pursuing police vehicle was based on an offender score of 9+, which included 11 or 12 prior convictions.[7] Two of these convictions were for unlawful possession of a controlled substance and are therefore constitutionally invalid. *Id.*

---

[6] The State argues that the trial court should "potentially correct [Nugent's] offender score" for his conviction for attempting to elude a pursuing police vehicle. Suppl. Br. of Resp't at 1. It is unclear whether or not this is a concession.

[7] The judgment and sentence lists eleven typed convictions and one additional handwritten conviction that occurred after Nugent committed the crime at issue in this case.

These constitutionally invalid convictions should not be considered in Nugent's sentencing proceedings. *See Ammons*, 105 Wn.2d at 187-88.

Although Nugent's offender score would still have been 9+ even without the two prior convictions for unlawful possession of a controlled substance,[8] the trial court took note of Nugent's criminal history immediately before sentencing Nugent to a mid-range sentence of 38 months confinement for attempting to elude a pursuing police vehicle, including sentencing enhancements. Because Nugent's prior convictions for possession of a controlled substance might have been considered as part of the trial court's sentencing decision on Nugent's conviction for attempting to elude a pursuing police vehicle, we remand to the trial court for resentencing on Nugent's attempting to elude a pursuing police vehicle conviction without consideration of Nugent's prior convictions for possession of a controlled substance. *See Ammons*, 105 Wn.2d at 187-88.[9]

## STATEMENT OF ADDITIONAL GROUNDS

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Nugent argues that his trial counsel was ineffective because counsel led a witness into informing the jury that Nugent was in prison at the time of the trial.[10] We disagree.

---

[8] During Nugent's sentencing hearing, the trial court stated that Nugent had an offender score of ten because the two convictions for unlawful possession of a controlled substance were the same criminal conduct and counted as a single offense. This method of calculation is not reflected on the judgment and sentence. But even with this approach, Nugent would still have an offender score of 9+ after removing the convictions for possession of a controlled substance.

[9] Because we remand for resentencing, we do not address Nugent's challenges to the various legal financial obligations. Nugent may raise those challenges in the trial court at resentencing.

[10] Nugent argues that "regardless of the judge[']s order to disregard the test[i]mony that I was in prison already they could not unhear what they already heard." SAG at 2. But there is no evidence in the record that the judge told the jury to disregard the testimony.

The Sixth Amendment to the U.S. Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that this court reviews de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33. To show prejudice, the appellant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Grier*, 171 Wn.2d at 33.

Here, even assuming without deciding that defense counsel's performance was deficient, counsel's performance did not prejudice the defense. The overwhelming evidence shows that Nugent attempted to elude a pursuing police vehicle while endangering one or more persons. When Deputy Helser turned on his take down lights, Nugent did not stop; instead he put his car in reverse while still looking forward. Nugent left the trail and eventually put his car in drive. Nugent hit a phone box and a DOT sign. Nugent then ended up on Highway 101 where traffic had to stop and yield for him. Nugent drove "recklessly and dangerously" while both Deputy Anderson and Deputy Helser chased him with their lights and sirens on. 1 VRP (April 24, 2019) at 148. Nugent eventually hit the median and spun out, facing the wrong direction on the highway, and his vehicle began rolling southbound on the northbound side of the highway. Nugent then exited the vehicle while the car kept rolling into northbound traffic, which had to stop.

Because any alleged deficiency in counsel's performance did not prejudice Nugent's defense, Nugent's ineffective assistance of counsel argument fails. *See Grier*, 171 Wn.2d at 33.

B. BOOKING PHOTOGRAPH

Nugent argues that the trial court erred by admitting an old booking photograph into evidence in the middle of trial. We disagree.

Evidentiary rulings are reviewed for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). "Discretion is abused if it is exercised without tenable grounds or reasons." *State v. Snedden*, 166 Wn. App. 541, 543, 271 P.3d 298 (2012).

Booking photos may be admitted at trial when identity is an issue. *See State v. Rivers*, 129 Wn.2d 697, 710-11, 921 P.2d 495 (1996). And "[e]vidence of prior misconduct is admissible to prove identity only if identity is actually at issue." *State v. Sanford*, 128 Wn. App. 280, 286, 115 P.3d 368 (2005). Booking photos can raise a prejudicial inference of criminal propensity. *Id.* But booking photos are not unfairly prejudicial because they merely show the fact of an arrest insofar as they are part of the regular arrest procedure. *See Rivers*, 129 Wn.2d at 711.

Here, whether Nugent was the driver was at issue. Deputy Helser wrote in his report of the incident that the driver had a tattoo on his neck below the jawline. But a tattoo below the jawline was not visible on Nugent during the trial. In order to prove that Nugent had a neck tattoo, and thus to prove the driver's identity as Nugent, the State moved to admit a booking photograph from a previous case which showed the neck tattoo. The trial court allowed the admission of the photograph because there had been testimony about the tattoo and its location. The trial court tried to eliminate the prejudicial inference of criminal propensity by ordering the photograph be cropped

and redacted so that it did not "overtly indicate that it's a booking photo or that it's based on arrest." 2 VRP (April 25, 2019) at 220.

Because the booking photograph was used for identifying Nugent as the driver of the vehicle, and the trial court attempted to eliminate the prejudicial inference of criminal propensity, the trial court did not admit the booking photograph into evidence based on untenable grounds or reasons. Therefore, the trial court did not abuse its discretion. *See Snedden*, 166 Wn. App. at 543.

C.      IDENTITY OF THE DRIVER

Nugent argues that there was insufficient evidence that he was the driver of the vehicle. We disagree.

In a sufficiency of the evidence challenge, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. In making a sufficiency challenge, the appellant admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *Id*.

RCW 46.61.024(1) states, "Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony."

Here, the State had to prove that Nugent was the driver of the vehicle. The evidence, viewed in the light most favorable to the State, shows that when the vehicle in question and Deputy Helser's vehicle were nose to nose, Deputy Helser could see the driver. Deputy Helser identified the driver as Nugent. Deputy Helser again saw Nugent's face when he was chasing Nugent on

14

foot and Nugent looked over his shoulder at Deputy Helser. Deputy Helser testified that there was no doubt in his mind that Nugent was driving. Further, Deputy Helser testified that the driver had a tattoo on his neck. The booking photograph of Nugent confirmed that Nugent had a tattoo on his neck. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Nugent was the driver of the vehicle. *See Salinas*, 119 Wn.2d at 201. Therefore, Nugent's sufficiency of the evidence claim fails.

D.      INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Nugent argues:

I also don[']t understand why my appe[l]late counsel chose not to contest the conviction, telling me that it is an issue for me to raise in a personal restraint pet[]ition. It is my understanding that it is the duty of my attorn[e]y to raise these issues in my direct appeal.

SAG at 2.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

RAP 10.10(c) states, "Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."

Here, Nugent does not inform this court of the specific issues that his appellate counsel stated needed to be brought in a personal restraint petition nor which conviction Nugent claims appellate counsel "chose not to contest." SAG at 2; *see* RAP 10.10(c). Because Nugent fails to inform this court of the nature of the alleged errors, we decline to review this challenge.

CONCLUSION

We affirm Nugent's conviction for attempting to elude a pursuing police vehicle, reverse Nugent's conviction for possession of a controlled substance, and remand to the trial court to vacate Nugent's conviction for possession of a controlled substance and for resentencing on the attempting to elude a pursuing police vehicle conviction only. Nugent may raise his challenges to the legal financial obligations at his resentencing.

No. 53724-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.

17