27 P.3d 1246 (2001)
STATE of Washington, Respondent,
v.
James B. ANCIRA, Appellant.
No. 46091-9-I.
Court of Appeals of Washington, Division 1.
July 30, 2001.
*1247 Thomas M. Kummerow, Washington Appellate Project, Seattle, for Appellant.
Ann M. Summers, King Co. Deputy Pros. Atty., Seattle, for Respondent.
BAKER, J.
After James Ancira violated a no-contact order requiring him to stay away from his wife, the trial court entered a new no-contact order as a condition of sentencing, which included Ancira's two minor children as well as his wife. Ancira objects to the inclusion of the children in the order. We conclude that the order violated Ancira's fundamental right to parent because it was not reasonably necessary to meet the State's legitimate objectives. Accordingly, we reverse.

I
James Ancira and his wife Andrea Valle are the parents of two minor children, ages twelve and four. There is a long history of physical abuse in the relationship. Ancira was required to stay away from Valle by the terms of a domestic violence no-contact order.
Ancira encountered Valle at a party, and they started talking. They decided to go to a convenience store with their children, but got into an argument on the way there. While Valle was in the store, Ancira drove away with the younger child. He was gone with the child for several days and would not return the child until Valle agreed to talk with him.
Ancira was charged with felony violation of a domestic violence no-contact order as prohibited by RCW 10.99.040(4). He pled guilty as charged, admitting having contact with Valle while knowing that a no-contact order was in effect and admitted that he had two prior convictions for violating a no-contact order. At the sentencing hearing, the trial court sentenced Ancira to a standard range sentence. As part of the sentence, pursuant to RCW 9.94A.120(20), the court ordered that Ancira have no contact with his wife or his two children for the maximum term of five years. The court gave two reasons for including the children in the no-contact order:
Number one, they were present when the last incident occurred. They were upset by it. The history of violence between you and your wife has been conducted before your children. I don't want any further harm to them. Even if they just witnessed it and aren't direct victims of physical violence themselves, it is extremely harmful to children. It is not in their best interest. It does not mean your parents can't see the kids on their own, but you may not have any contact with your wife and kids. You can't call them, drive by, you can't show up at their school. You can't write them letters. You can't ask another person to contact them for you.
The trial court stated that it would be willing to reconsider the no-contact order after a period of eighteen months. Ancira objected to the inclusion of the children in the no-contact order, and now appeals.

II
We review the imposition of crime-related prohibitions for an abuse of discretion.[1] Abuse of discretion occurs when the decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.[2]
Ancira argues that the condition of his sentence preventing him from all contact with his children for five years unconstitutionally infringes upon his fundamental right to parent. The State contends that this infringement is justified by its compelling interest in protecting Ancira's children from harm.
Parents have a fundamental liberty interest in the care, custody, and control of their children.[3] Prevention of harm to children *1248 is a compelling state interest,[4] and the State does have an obligation to intervene and protect a child when a parent's "actions or decisions seriously conflict with the physical or mental health of the child."[5] But limitations on fundamental rights are constitutional only if they are "reasonably necessary to accomplish the essential needs of the state."[6] The fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children.[7] Therefore, we must determine whether the record supports the proposition that prohibiting Ancira from all contact with his children is reasonably necessary to protect them from the harm of witnessing domestic violence.
We conclude that the State has failed to demonstrate that this severe condition was reasonably necessary to prevent the children from witnessing domestic violence. There can be no doubt that witnessing domestic violence is harmful to children. And there is ample evidence in the record that Ancira has not been an exemplary parent. But, contrary to the State's view, these broad assertions, standing alone, do not form a sufficient basis for this extreme degree of interference with fundamental parental rights.
State v. Letourneau is instructive. In that case, the defendant was sentenced for second degree rape of a child. We held that a condition prohibiting the defendant from unsupervised in-person contact with her biological minor children was not reasonably necessary to prevent her from sexually molesting them, where there was no evidence that she was a pedophile or posed a danger of molesting her children.[8] Similarly, there is no evidence that prohibiting Ancira from all contact with his children for a lengthy period is reasonably necessary to prevent them from the harm of witnessing domestic violence. Nor does the record support the total prohibition of indirect contact with the children by telephone, mail, e-mail, etc. The State has not explained why prohibiting Ancira from contacting his wife would not protect the children from the harm of witnessing domestic violence between their parents. The trial court may have been concerned about Ancira's repeated violations of the no-contact order, but completely prohibiting him from all contact with his children is extreme and unreasonable given the fundamental rights involved.
On this record, some limitations on Ancira's contact with his children, such as supervised visitation, might be appropriate, even as part of a sentence. Generally, however, the criminal sentencing court is not the proper forum to address these legitimate concerns other than on a transitory basis. In Letourneau, we explained why the family and juvenile courts are better equipped to address visitation issues:
The Legislature has provided more appropriate forums than the criminal sentencing process to address the best interests of dependent children with respect to most visitation issuesthe family court in the case of marital dissolution and paternity cases, and the juvenile court in the case of dependency proceedings.... It is the business of the family and juvenile courts to address the best interests of minor children with respect to most other kinds of harm that could arise during visitation with a parent who has been convicted of a crime.... To that end, the family and juvenile courts have authority to appoint guardians ad litem to investigate the best interests of minor children and those courts have broad discretion to tailor orders that address the needs of children in ways that sentencing courts in criminal proceedings cannot.[9]
In addition, when child visitation issues are addressed in the context of dissolution or dependency proceedings, there are statutory *1249 procedures in place that protect a parent's right to procedural due process where the fundamental right to parent is at stake.[10]
The record in this case indicates that at the time Ancira was sentenced, there was a pending marital dissolution in Yakima County. Ancira argued that the dissolution court ought to address child visitation issues, but the sentencing court disagreed and entered the no-contact provision as a condition of Ancira's sentence. While the trial court in this case was motivated by legitimate concerns for the welfare of Ancira's children, it erred in attempting to address them by prohibiting Ancira from all contact with his children as a condition of sentence for the crime of violating a no-contact order prohibiting him from contacting his wife.
The State also contends that the children were properly included in the order because they were witnesses to the crime. RCW 9.94A.120(20)[11] authorizes the trial court to impose a no-contact order as a condition of sentence that relates directly to the circumstances of the crime for which the offender has been convicted. "No causal link need be established between the condition imposed and the crime committed, so long as the condition relates to the circumstances of the crime."[12] We agree that Ancira's children, as witnesses, were directly connected to the circumstances of the crime. However, this does not ameliorate the constitutional problems discussed above.
The condition was not reasonably necessary to protect the children against the harm of witnessing domestic violence between their parents. This matter is best resolved by the family court in the dissolution proceeding. We strike the portion of the sentencing order prohibiting Ancira from all contact with his children for five years, and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COLEMAN, J., and BECKER, A.C.J., concur.
NOTES
[1] State v. Riley, 121 Wash.2d 22, 36-37, 846 P.2d 1365 (1993).
[2] State v. Hays, 55 Wash.App. 13, 16, 776 P.2d 718 (1989).
[3] Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
[4] In re Dependency of C.B., 79 Wash.App. 686, 690, 904 P.2d 1171 (1995).
[5] In re Sumey, 94 Wash.2d 757, 762, 621 P.2d 108 (1980).
[6] State v. Riles, 135 Wash.2d 326, 350, 957 P.2d 655 (1998).
[7] State v. Letourneau, 100 Wash.App. 424, 439, 997 P.2d 436 (2000).
[8] Letourneau, 100 Wash.App. at 442, 997 P.2d 436.
[9] Letourneau, 100 Wash.App. at 443, 997 P.2d 436.
[10] ch. 13.34 RCW.
[11] RCW 9.94A.120(20) states: "As part of any sentence, the court may impose and enforce an order that relates directly to the circumstances of the crime for which the offender has been convicted, prohibiting the offender from having any contact with other specified individuals or a specific class of individuals for a period not to exceed the maximum allowable sentence for the crime, regardless of the expiration of the offender's term of community supervision or community placement."
[12] State v. Llamas-Villa, 67 Wash.App. 448, 456, 836 P.2d 239 (1992). See State v. Parramore, 53 Wash.App. 527, 531, 768 P.2d 530 (1989) (upholding community supervision condition requiring defendant who was convicted of delivery of marijuana to undergo urinalysis, even though his crime did not involve marijuana use.)