# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 70457-5-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PETER DANIEL ANSELL, | ) | |
| Appellant. | ) | FILED: April 21, 2014 |

DWYER, J. — Peter Ansell pleaded guilty to three counts of child molestation in the first degree. In his plea agreement, he admitted that he molested three neighborhood children, including at least two incidents which took place within his home while his own minor son and minor daughter were in the same room. As part of his sentence, he was prohibited from having any contact with his children until they reached the age of majority. He appealed the imposition of the no-contact order as to his children. We reversed and remanded, directing the trial court to apply the proper standard—whether the no-contact order is reasonably necessary to realize a compelling state interest, and whether the restrictions imposed by the order are narrowly drawn to effectuate this interest—in resentencing Ansell. Ansell was resentenced and once again appeals. Concluding that the trial court, on remand, applied the proper standard in modifying the no-contact order, we affirm.

No. 70457-5-I/2

I

Ansell was charged by information with three counts of child molestation in the first degree and pleaded guilty to all three counts. In his plea agreement, he stipulated to a number of facts, including that on at least two occasions he molested neighborhood children in his home while his two minor children were in the same room. He also stipulated to the fact that he told one of the victims that her friendship with his daughter would end if she ever reported the sexual abuse. Following his guilty plea, and as part of his sentence, he was ordered to have no contact with his children until they reached the age of majority.

Ansell appealed the imposition of the no-contact order and this court, in an unpublished opinion, reversed and remanded, directing the trial court to apply the proper standard in resentencing Ansell.[1] Subsequently, Nancy Leonard— Ansell's ex-wife who has custody of the couple's two children—submitted a letter to the trial court, wherein she requested that the court uphold the no-contact order in resentencing Ansell.

On March 15, 2012, the trial court modified Ansell's original sentence, including the no-contact order, concluding that Ansell could not have contact with his children until he rebutted the presumption that he poses a present danger to his children, as set forth in RCW 26.09.191(2)(f). Subsequently, Ansell renewed his motion to modify the sentencing conditions. He requested permission to have unrestricted telephone and written correspondence with his children, as well as supervised in-person visitation. In response to the motion, the trial court

---

[1] State v. Ansell, noted at 163 Wn. App. 1026 (2011).

- 2 -

conducted another hearing on April 19, 2013. During the course of that hearing,

Ansell's counsel advised the court that Ansell would not be eligible for enrollment

in a prison-based sex offender treatment program until approximately one year

before his release, which is scheduled to occur on February 24, 2019.

On April 25, the trial court issued an order supported by written findings of

fact and conclusions of law. The trial court's findings of fact are as follows:

1. On May 29, 2009, the defendant pled guilty to three counts of Child Molestation in First Degree (RCW 9A.44.083) involving three separate child victims. The Certificate for Determination of Probable Cause (filed with the defendant's Statement of Defendant on Plea of Guilty to Felony Sex Offense) indicates the following:
- Defendant sexually abused victim E.W. on a bottom bunk bed while defendant's daughter was on the top bunk bed;
- Defendant sexually abused E.W. while defendant's son and daughter were in the same house; and
- Defendant's penis was exposed to victim E.W. while the defendant and E.W. were in the same basement as the defendant's daughter.

2. Defendant was sentenced on June 19, 2009. As a condition of sentence (appendix F to the judgment and sentence), the defendant was ordered to obtain a sexual deviancy evaluation and follow all treatment recommendations.

3. Defendant is currently incarcerated in Washington Department of Corrections. Based on a review of documents included as exhibits to defendant's motion, defendant is not yet eligible to receive sex offender treatment while at the Department of Corrections.

4. Defendant has not produced to the Court or State a sexual deviancy or psychosexual evaluation that appears to comply with Washington Administrative Code (WAC) 246-930-320.

5. Defendant has not engaged in sex offender treatment since ordered by the court as a condition of sentencing.

6. To the extent these findings of fact are later determined to be conclusions of law, the Court adopts the same.

The trial court's conclusions of law are as follows:

1. The State has a compelling state interest in protecting

children, specifically the defendant's children based on the following case-specific facts: defendant pled guilty to and was convicted of sexually molesting three different children while his own children were in close proximity; neither the State nor the Court is in possession of a sexual deviancy or psychosexual evaluation that complies with Washington Administrative Code (WAC) 246-930-320; and the defendant is currently an untreated sex offender.

2. The crime-related prohibitions set forth in this order are reasonably necessary to effectuate the compelling state interest of protecting children, specifically the defendant's children. This is particularly compelling in this case given the facts contained in the Certificate for Determination of Probable Cause, including that defendant sexually abused child victims in close proximity to his own children.

3. The crime-related prohibitions set forth in this order are narrowly drawn to effectuate the compelling state interest of protecting children, specifically the defendant's children.

4. To the extent these conclusions of law are later determined to be findings of fact, the Court adopts the same.

Based on these findings of fact and conclusions of law, the trial court modified the judgment and sentence to strike the no-contact order, permitting Ansell to have written contact with his children during his period of incarceration, provided that the correspondence was approved by a counselor or therapist for the children. Furthermore, if approved written contact were to proceed without negatively affecting the children, then Ansell would be permitted to have in-person contact with his children during his period of incarceration, provided that such in-person contact was first approved by a counselor or therapist for the children and provided that the contact was supervised by an adult aware of Ansell's convictions. Ansell then filed a motion to allow monitored phone contact, which the trial court denied.

Ansell appeals the trial court's April 25, 2013 order modifying the

conditions of his sentence, as well as the trial court's May 24, 2013 order on Ansell's motion to clarify and amend the April 25 order.

II

Ansell contends that the trial court erred on remand. This is so, he asserts, because the trial court's findings of fact and conclusions of law "fly in the face" of this court's mandate to the trial court, as well as prior precedent. We disagree.

"We review conclusions of law de novo." Nguyen v. City of Seattle, __ Wn. App. __, 317 P.3d 518, 522 (2014). However, "when an appellant challenges conclusions of law not based on the law itself, but rather claiming that the findings do not support the court's conclusions, appellate review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether those findings support the conclusions of law." Nguyen, 317 P.3d at 522. "'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person that the finding is true." In re Estate of Langeland, 177 Wn. App. 315, 320, 312 P.3d 657 (2013). "The label applied to a finding or conclusion is not determinative; we will 'treat it for what it really is.'" Nguyen, 317 P.3d at 522 (quoting Para-Med. Leasing, Inc. v. Hangen, 48 Wn. App. 389, 397, 739 P.2d 717 (1987)).

Our first task, then, is to inquire whether the trial court's findings of fact are supported by substantial evidence. Ansell challenges two of the trial court's factual findings, both of which are reproduced below:

4. Defendant has not produced to the Court or State a

sexual deviancy or psychosexual evaluation that appears to comply with Washington Administrative Code (WAC) 246-930-320.
    5. Defendant has not engaged in sex offender treatment since ordered by the court as a condition of sentencing.

Substantial evidence supports the finding that Ansell did not produce a sexual deviancy or psychosexual evaluation that complied with WAC 246-930-320. The only document relied upon by Ansell is a letter from Dr. G. Christian Harris, wherein Dr. Harris indicates that he provided treatment to the defendant prior to sentencing. Although Dr. Harris makes a number of claims regarding Ansell's progress, the trial court was correct to find that his two-page letter did not meet the standards for a sexual deviancy evaluation mandated by WAC 246-930-320. The core inadequacy of Dr. Harris's letter is his failure to support his conclusions with clinical data. WAC 246-930-320 mandates completion of written evaluation reports and further requires that these reports include information from a variety of sources beyond client interviews. Dr. Harris asserts that he conducted over 50 sessions with Ansell, and while we have no reason to question the veracity of that claim, Dr. Harris's two page-letter—devoid of clinical data—simply does not meet the standards enumerated by WAC 246-930-320. The trial court's finding is supported by substantial evidence.

Substantial evidence also supports the trial court's finding that Ansell has not engaged in sex offender treatment. Although Ansell correctly notes in his statement of additional grounds that the judgment and sentence did not require him to engage in sex offender treatment as a condition of sentencing, the trial court's finding that he has not engaged in sex offender treatment remains

supported by substantial evidence.[2] This is so because Dr. Harris's letter, which purports to establish that Ansell has been treated, does not comply with the strictures of WAC 246-930-320.[3]

Now that we have examined whether the findings of fact are supported by substantial evidence, we turn to the issue of whether the findings of fact support the conclusions of law. Ansell contends that the trial court's conclusions of law were erroneous. This is so, he asserts, because "the factual records" show "no evidence whatsoever of misconduct toward the Defendant's own children," which should have compelled the trial court to rely on cases such as In re Pers. Restraint of Rainey, 168 Wn.2d 367, 229 P.3d 686 (2010) and State v. Ancira, 107 Wn. App. 650, 27 P.3d 1246 (2001), in resentencing him. Appellant's Br. at 20. We disagree.

Specifically, Ansell challenges the following conclusions of law entered by the trial court:

> 1. The State has a compelling state interest in protecting children, specifically the defendant's children based on the following case-specific facts: defendant pled guilty to and was convicted of sexually molesting three different children while his own children were in close proximity; neither the State nor the Court is in possession of a sexual deviancy or psychosexual evaluation that complies with Washington Administrative Code

---

[2] In short, the record presented to us does not reflect that treatment was ordered. The record does reflect that no suitable treatment has been completed.

[3] With respect to the first conclusion of law, Ansell challenges the statement "the defendant is currently an untreated sex offender." This statement, however, is properly characterized as a finding of fact, not a conclusion of law. The trial court's conclusion of law was, "The State has a compelling state interest in protecting children, specifically the defendant's children." The subsequent statement with which Ansell takes issue was used to support the trial court's conclusion, but was not a conclusion of law itself. In view of our determination that the fifth finding of fact was supported by substantial evidence, we also conclude that this finding is supported by substantial evidence.

(WAC) 246-930-320; and the defendant is currently an untreated sex offender.

2. The crime-related prohibitions set forth in this order are reasonably necessary to effectuate the compelling state interest of protecting children, specifically the defendant's children. This is particularly compelling in this case given the facts contained in the Certificate for Determination of Probable Cause, including that defendant sexually abused child victims in close proximity to his own children.

3. The crime-related prohibitions set forth in this order are narrowly drawn to effectuate the compelling state interest of protecting children, specifically the defendant's children.

We are satisfied, as an initial matter, that the trial court *invoked* the correct standard in determining the parameters of Ansell's sentencing conditions. The trial court's order reflects our directive that it consider whether the sentencing conditions burdening Ansell's fundamental right to parent are reasonably necessary to realize a compelling state interest and, further, whether the sentencing conditions are narrowly drawn to effectuate the compelling state interest. See State v. Ansell, noted at 163 Wn. App. 1026.

We are further satisfied that the trial court's findings of fact support its conclusions of law. The first conclusion, "The State has a compelling state interest in protecting children, specifically the defendant's children" is supported by the finding that Ansell admitted to sexually abusing children while his own children were in close proximity. In a similar case, State v. Berg, 147 Wn. App. 923, 198 P.3d 529 (2008), abrogated on other grounds by State v. Mutch, 171 Wn.2d 646, 254 P.3d 803 (2011), we affirmed the trial court's conclusion that the State had a compelling interest in protecting the defendant's biological daughter, where the defendant was convicted of raping and molesting his girlfriend's 14-

year-old daughter in their home—in close proximity to his own daughter. 147 Wn. App. at 942-43. We conclude, in light of Berg, that the first conclusion of law is supported by the trial court's findings of fact.

The second conclusion, "The crime-related prohibitions set forth in this order are reasonably necessary to effectuate the compelling state interest of protecting children, specifically the defendant's children," is supported by the same findings of fact as the first conclusion—that Ansell sexually abused other children while his own children were in close proximity, and that Ansell failed to provide competent evidence that he had been appropriately treated for the condition that caused him to do so.

Berg again supports the trial court's conclusion. After the defendant in Berg was convicted of raping and molesting his girlfriend's 14-year-old daughter in their home, the trial court imposed an order restricting contact with other female children, including the defendant's biological daughter, to contact supervised by a responsible adult with knowledge of the defendant's conviction. 147 Wn. App. at 930. In affirming the trial court's order, we reasoned that an order restricting contact with the defendant's daughter, who lived in the home where the defendant was acting as her parent, was reasonable because the victim in Berg also lived in the home where the defendant was acting as her parent. 147 Wn. App. at 943. Thus, allowing contact with his daughter would permit "'virtually the same arrangement again with another young girl,'" which we found objectionable. Berg, 147 Wn. App. at 942-43.

As was the victim in Berg, the victims here were present in the home of

- 9 -

their abuser when they were abused. Even though the victims did not live with Ansell, they were present in a home where Ansell was acting as their parental figure. Moreover, Ansell used his position as a parental figure to further his reprehensible objectives. Therefore, as in Berg, an order restricting Ansell's contact with his children is reasonably necessary to protect his children from any attempts by Ansell to foster the kind of trust in him as a parental figure he fostered in the victims of his abuse. Similarly, Ansell's position—that his abuse of his children's peers in his children's presence were not actions involving a risk of emotional or physical harm to his children—need not have been credited by the sentencing court.

Ansell does not attempt to distinguish Berg. Rather, he urges us to rely on Ancira and Rainey. Although both cases articulate the correct legal standard, both are distinguishable on their facts.

In Ancira, we struck down a no-contact order because there was no evidence that prohibiting the defendant from all contact with his children was reasonably necessary to prevent them from the harm of witnessing domestic violence. 107 Wn. App. at 654-55. The State failed to explain "why prohibiting Ancira from contacting his wife would not protect the children from the harm of witnessing domestic violence between their parents." Ancira, 107 Wn. App. at 655. Unlike in Ancira, however, where the no-contact order as to the defendant's wife effectively prevented the potential harm with which the court was concerned, the limitations on Ansell contacting his children are the only barriers preventing the potential harm with which the court was concerned here. "So long as the

defendant complied with the order prohibiting contact with his wife, the court had no reason to believe allowing him contact with his children would cause them further exposure to domestic violence." Berg, 147 Wn. App. at 943 (explaining the basis for our holding in Ancira). Thus, Ancira is inapposite.

In Rainey, our Supreme Court held that a no-contact order preventing the defendant from contacting his daughter did not violate the defendant's constitutional right to parent. 168 Wn.2d at 380. The court ruled in this manner, in part, because the defendant had previously kidnapped his daughter and taken her to a foreign country. Rainey, 168 Wn.2d at 379. However, the fact that the defendant in Rainey was convicted of perpetrating a felony against his own child does not undermine the trial court's conclusion in this case. Rainey does not stand for the proposition that a trial court may only impose sentencing conditions restricting a defendant's access to his own children if the defendant has been convicted of committing a felony against his own child.

Neither Ancira nor Rainey is on point. Therefore, we conclude, in light of Berg, that the second conclusion of law is supported by the trial court's findings of fact.

The trial court's third conclusion of law, "The crime-related prohibitions set forth in this order are narrowly drawn to effectuate the compelling state interest of protecting children, specifically the defendant's children," is also supported by the findings of fact and, again, by Berg. As with the first two conclusions of law, the third is supported by the finding that Ansell admitted to sexually abusing children while his own children were in close proximity. Berg confirms that the crime-

related prohibitions were narrowly drawn to effectuate the State's interest. In Berg, we affirmed the trial court's order restricting the defendant's contact with any female minors, including his own daughter, concluding that it was sufficiently tailored to the crime because "it addresses the potential for the same kind of abuse at issue here, which Berg was able to achieve by exploiting a child's trust in him as a parental figure." 147 Wn. App. at 944; see also State v. Warren, 165 Wn.2d 17, 35, 195 P.3d 940 (2008) ("[W]e agree with the Court of Appeals that the order prohibiting contact with [the defendant's wife] was directly related to the circumstances of the crime and was not an unconstitutional restriction on [the defendant's] constitutional rights.").

Similarly, in this case, the restrictions imposed by the trial court on Ansell having contact with his own children address the potential for the same kind of abuse at issue in this case, which Ansell was able to achieve by exploiting the trust placed in him by children as their parental figure. Preventing Ansell from contacting his children by telephone, for example, prevents him from again fostering the same kind of trust he had with the victims of his abuse. Prohibiting Ansell from having unsupervised written correspondence with his children similarly prevents him from again fostering the same kind of trust he had with the victims of his abuse. Finally, prohibiting in-person contact until a determination was made that the written contact was not negatively affecting the children, further safeguards his children from being exploited. The trial court's decision to impose restrictions on all authorized methods of contact—as well the total prohibition on communication by telephone—between Ansell and his own

children during the time in which he remains incarcerated is, thus, narrowly drawn to effectuate the State's compelling interest in protecting Ansell's children.

Affirmed.

We concur: