**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 82352-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL PAULSON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Michael Paulson appeals his judgment and sentence for one count of assault in the second degree. Paulson argues that the no-contact orders entered as part of his sentence are unconstitutional in scope and duration because they interfere with his fundamental right to parent. Paulson also contends that the no-contact orders must be modified to allow for contact with the mother as part of a court process, and the length of the no-contact orders exceed the statutory maximum for second degree assault. We remand to limit the duration of the no-contact orders to a maximum of 10 years. We otherwise affirm.

<u>FACTS</u>

Michael Paulson is the father of two minor children, E.P., born September 23, 2012, and Z.P., born August 14, 2015. The children were born during Paulson's

Citations and pin cites are based on the Westlaw online version of the cited material.

marriage to Becky Paulson. Paulson repeatedly subjected Becky[1] to emotional and physical abuse. On June 3, 2017, Paulson strangled Becky in front of E.P. and Z.P. A jury convicted Paulson of second degree assault. The jury returned special verdicts finding the assault involved aggravated domestic violence, was committed against a family or household member, and was within sight or sound of E.P. and Z.P.

At sentencing the prosecution recommended a 36-month exceptional sentence and a 10-year no-contact order. In the request, the prosecution argued that the sentence and order justifiably interferes with Paulson's fundamental right to parent because of the nature of the offense, aggressive behavior occurred in other instances, and E.P.'s statement that "he is scared of daddy and worries when he might come back."

The court imposed an exceptional aggravated sentence and agreed to the no-contact orders, citing the toxic environment Paulson created for his children:

> I am indicating that substantial and compelling reasons departing from the presumptive range are in fact established. I am indicating that there will be for the maximum term no contact with Becky Paulson, [E.P.] or [Z.P.]. I believe that the jury has determined that this strangulation, not just a slap but a strangulation which could have led to death or brain damage was done in the presence of the children in this toxic environment, and unless another court decides after listening to the children's therapist or psychologist that something else needs to happen, the father needs to have no contact with the children at this time.
> . . . .
>
> It's the court's intention— so that, Mr. Paulson, you're clear on this, it's not the court's intention to break up families. I have done divorce after divorce in this court, and it's not good for the children to suffer through the parents' disagreements. My intention is to make sure that you get the help that I think you need. And people could debate that. I'm sure that counsel has a different spin on it, but the jury found what they found, and I heard what I heard. I think you need some help, and I would invite you to be open to it, that you get the evaluations that you need, and if the people

---

[1] We refer to Becky Paulson by her first name for clarity and intend no disrespect.

say that you need the help to be a better dad so that you can reintegrate into the lives of your children in a healthy and productive way, do that. That is what the court is asking.

On appeal, Paulson successfully argued that the trial court had not made a sufficient record that it was considering Paulson's right to parent when it barred contact with his children. The court remanded the case to the trial court for a fuller explanation. State v. Paulson, No. 79627-5-I, slip op. at 1 (Wash. Ct. App. Oct. 12, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/796275.pdf.

On January 21, 2021, the sentencing court again heard arguments as to the propriety and duration of the no contact orders. The parties discussed a parenting plan and civil restraining order entered in family court. The parenting plan and restraining order were filed after the original sentencing hearing. The civil restraining order protects the children until they turn 18 years of age. E.P. and Z.P. will turn 18 on September 23, 2030, and August 14, 2033, respectively.

The court reexamined the facts of the case in light of the precedent and concluded that a no-contact order was appropriate and necessary under the circumstances:

I do believe that the no-contact order protecting the children was absolutely necessary. I believe that it is on this record clearly necessary to protect the children from not just physical harm, but the mental and emotional harm that . . . they were exposed to by way of the defendant's controlling behavior, his assault on the mother's integrity, his physical aggressive behavior in the presence of the children.

It is not enough that the children were not physically attacked. Children need to be mentally and emotionally protected as well. So we're talking about the psychological harm.

However, the court concluded that the previous order should be modified to reflect the pending family court order. The court ruled:

[T]he father has a fundamental right to rear his children, but in this situation, he has compromised it and so he needs to follow through on the courses that were suggested by the family court in order to have that fundamental right returned to him.

[The State] has an obligation to intervene and to protect a child when the parent's actions or decisions seriously conflict with the physical or mental state of the child, and I believe that's what we have here.

The court imposed an order that barred contact until the children turned 18, in line with the family law order. The court also allowed for the possibility of changed circumstances. It ruled that "should there be a psychological or counseling report from the children's care provider or the therapist, that it is healthy for the children to reconnect with their father, the court will reconsider this prohibition, and the reconsideration will be in line with what the children's therapists say is healthy for them."

ANALYSIS

A. Duration

Paulson argues that the no-contact orders cannot exceed the statutory maximum for second degree assault. The State concedes this issue and we accept the State's concession.

Trial courts have the authority to impose crime-related prohibitions, including no-contact orders, as part of a sentence. RCW 9.94A.505(9); State v. Armendariz, 160 Wn.2d 106, 113, 156 P.3d 201 (2007). A no-contact order imposed as a condition of a sentence may not exceed the statutory maximum for the crime. RCW 10.99.050(2)(d); RCW 9.94A.505(5); Armendariz, 160 Wn.2d at 119-20. Second degree assault by strangulation carries a statutory maximum sentence of 10 years. RCW 9A.20.021(1)(b). The court ordered Paulson to have no-contact with his children until they reach age 18.

For Z.P. and E.P., the no-contact orders are set to expire more than 14 years and 11 years from the date of sentencing respectively.

Thus, the trial court exceeded its statutory authority in imposing no-contact orders which exceed the 10-year statutory maximum for the crime of second degree assault. We remand to the trial court to correct the error.

B. Scope

Paulson argues that the no-contact orders are unconstitutional in scope and duration and interfere with his fundamental right to parent.[2] We disagree.

Sentencing courts may prohibit "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). Following a domestic violence conviction, courts may prohibit conduct with the victim and no-contact orders may extend up to the statutory maximum for the crime committed. RCW 10.99.040(2)(a); Armendariz, 160 Wn.2d at 119-20. The court generally reviews crime-related prohibitions for an abuse of discretion. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). However, parents have a fundamental liberty interest in the care, custody, and management of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A court abuses its discretion by violating an individual's constitutional rights. State v. Iniguez, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).

---

[2] Paulson also argues that the orders inappropriately bar contact with Becky for purposes of dealing with family court matters. We disagree. The postconviction domestic violence no-contact order pertaining to Becky allows contact "for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers." The no-contact orders for E.P. and Z.P. contain the same exception. Paulson does not need direct contact with Becky or the children under the current no-contact orders. This restriction is not an unconstitutional infringement of his right to parent, but a just and reasonably necessary restriction to keep the victim and the children safe.

Sentencing conditions that interfere with the fundamental right to parent are subject to strict scrutiny. State v. Warren, 165 Wn.2d 17, 32-34, 195 P.3d 940 (2008). The condition "must be reasonably necessary to accomplish the essential needs of the State and public order." Warren, 165 Wn.2d at 32-34. Additionally, the condition must be "sensitively imposed," with "no reasonable alternative way to achieve the State's interest." Warren, 165 Wn.2d at 32, 35. In issuing a no-contact order, the court must consider whether the order is reasonably necessary in scope and duration to prevent harm. Rainey, 168 Wn.2d at 377-82. In State v. Torres, 198 Wn. App. 685, 690, 393 P.3d 894 (2017), this court summarized the requisite inquiry:

> [T]he trial court shall first address whether a no-contact order remains reasonably necessary in light of the State's interests in protecting M.T. from harm. If it is, then the court shall endeavor to narrowly tailor the order, both in terms of scope and duration. When it comes to the order's scope, the court shall consider less restrictive alternatives, such as supervised visitation, prior to restricting all personal contact between Mr. Torres and his child. See, e.g., State v. Ancira, 107 Wn. App. 650, 654-44, 27 P.3d 1246 (2001). In addition, the court's order should recognize that "what is reasonably necessary to protect the State's interests may change over time." . . . Accordingly, the court shall consider whether the scope of the no-contact order should change over time. The court shall also reconsider whether the ultimate length of the no-contact order remains appropriate.

Here, the court considered the factors outlined in Torres. In justifying the order, the court cites the serious nature of strangling Becky in front of the children, the long-term pattern of abuse, and the toxic environment Paulson created. The trial court discussed Ancira and Warren on the record.

In Ancira, the court imposed a five-year no-contact order after Ancira drove away with his four-year-old child and did not return until his wife agreed to talk with him. 107 Wn. App. at 652. This court reversed, explaining the trial court failed to show how

supervised visitation without the mother's presence or indirect contact would jeopardize this goal. Ancira, 107 Wn. App. at 652. In Warren, the court issued a lifetime no-contact order over his two step daughters and their mother. 165 Wn.2d at 31-32. The court affirmed the no-contact order, stating it was not an unconstitutional restriction on the defendant's fundamental constitutional right to marry because it was reasonably necessary to achieve a compelling state interest. Warren, 165 Wn.2d at 34.

The court returned to a discussion of the facts to examine the precedent and determine whether there was a compelling state interest and whether the restriction was reasonably necessary and narrowly tailored. The court explained that Paulson was convicted of assault in the second degree by strangulation in the presence of the young children. This was not just a domestic violence assault, but an assault with aggravated factors. One child was in the victim's arms at the time and the victim was engaging in protective measures to keep the child safe from Paulson. The other child had ahold of Becky's leg at the time of the incident. A witness indicated that Becky endured daily verbal abuse and controlling behavior from Paulson, often in the presence of the children. Testimony showed Paulson was upset with the children and that he would often misuse bible scripture, and that he would yell, throw things, and punch walls in the presence. The record shows there was a toxic atmosphere in the home with the children. Additionally, the court discussed that children subject to similar environments develop clinical anxiety, posttraumatic stress disorder, hypervigilance, fear, loyalty confusion, and more.

The court further explained the order may need to be modified to reflect the parallel family court matter. However, the court restated that, in light of the physical,

mental, and emotional harm the children were subject to, the no-contact order is absolutely necessary. The court explained, "social media contacts, even letters and so forth, in and of themselves cannot erase what could be considered as mental terror, and the same thing for visits, whether in an open space or not. If the children are not psychologically prepared for it, all it does is reopen the wound and it just delays the healing on the part of the child."

The court clearly analyzed the relevant factors to establish that the no-contact order is reasonably necessary and narrowly tailored to the specific facts of this case. The compelling interest in protecting the children is reasonably achieved through no contact until the children are deemed healthy and able by a therapist or psychologist. This is a reasonably necessary and justified step. Importantly, each analysis occurs under the unique facts of the case. Warren, 165 Wn.2d at 35. Here, the court analyzed the relevant factors and exercised its discretion in determining the scope of the protection order.

Additionally, the court tempered the scope and duration of the no-contact order by stating:

> [T]he father has a fundamental right to rear his children, but in this situation he has compromised it and so he needs to follow through on the courses that were suggested by the family court in order to have the fundamental right returned to him. . . . [S]hould there be a psychological or counseling report from the children's care provider or the therapist, that it is healthy for the children to reconnect with their father, the court will reconsider this prohibition, and the reconsideration, Mr. Paulson, will be in line with what the children's therapists say is healthy for them.[3]

---

[3] Paulson argues "a family court would be in a significantly better position to assess whether Paulson is capable of contacting and parenting his sons in a safe and reliable manner." Here, the court is directing the criminal no-contact order to follow the parenting plan and psychological evaluations made in the family court case. Thus, the trial judge here is de facto deferring matters to the family court.

Paulson cites Rainey to argue the orders are too lengthy. Rainey, 168 Wn.2d at 371. In Rainey, Rainey was convicted of the violent crime of kidnapping in the first degree. Rainey, 168 Wn.2d at 371. The court determined that the facts were sufficient to establish that a complete no-contact order was reasonably necessary to protect the child, however, the court reversed because the sentencing court provided no justification for the order's lifetime duration. Rainey, 168 Wn.2d at 374, 380.

Here, the court explained that the toxic environment created by Paulson had enduring psychological and mental effects on the children. But, in the interest of the children, the court specifically allowed future modification on the scope and the duration of the order predicated on a showing that contact with Paulson would be healthy for the children. This condition creates an order that is reasonably necessary and narrowly tailored to ensure the children are protected and healthy.

"The interplay of sentencing conditions and fundamental rights is delicate and fact-specific," and is thus better addressed by the trial court. Rainey, 168 Wn.2d at 377-78. The court examined the specific facts of this case and explained that the conditions of the no-contact orders are reasonably necessary and narrowly tailored to further the compelling State interest in keeping the children safe and healthy. We decline to overturn the reasoned discretion of the trial court.

We remand to limit the no-contact orders to a period of time not to exceed the statutory maximum of 10 years and affirm on all other grounds.

_Mann, C.J._

WE CONCUR:

_Coburn, J._