# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55331-7-II |
| Respondent, | |
| v. | |
| DAVID RAY CURTIS, aka DAVID R. CURTIS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—During an incident when David Ray Curtis assaulted his wife, Christina Vinson, their nine-year-old child had to speak with a 911 dispatcher until police arrived. Curtis then called Vinson three times from jail while awaiting trial despite a no contact order. A jury convicted Curtis of fourth degree assault and three counts of felony violation of a no contact order. The trial court prohibited Curtis from contacting Vinson for five years except for the service of court documents or contact by lawyers. The no contact order did not prohibit contact with Curtis's and Vinson's two children.

Curtis appeals, arguing for the first time that the five-year no contact order unlawfully interferes with his fundamental right to parent because it does not contain an exception allowing Vinson to facilitate contact between Curtis and his minor children.

We affirm Curtis's judgment and sentence and the no contact order.

FACTS

Curtis and Vinson are married and have two children, KC and CC. Between 2012 and 2015, Curtis was convicted three times of violating domestic violence protection orders or no contact orders. At least one of the incidents was a violation of an order prohibiting contact with Vinson.

In 2020, when KC was nine years old, Vinson called 911 and requested police assistance. KC also spoke to the 911 operator, stating that Curtis had "slapped [Vinson] in the face super hard" and that Vinson was "really scared" Curtis would "come into [Vinson's] room and beat her up." Ex. 13A at 2-3. KC told the dispatcher that "[h]e just said he'll put a hole in her head." *Id.* at 5.

Curtis then went outside to the front lawn of the house and Vinson hid in her closet. Police arrived and a police officer who interviewed Vinson observed bruising around both of her eyes: "One eye was yellowing, like an older bruise . . . the other one, it was pink and raised up and swollen." 2 Verbatim Report of Proceeding (VRP) at 208.

The State initially charged Curtis with felony harassment, fourth degree assault, third degree malicious mischief, and second degree animal cruelty. After a pretrial no contact order was entered prohibiting him from contacting Vinson, Curtis called Vinson's telephone three times from jail. The State then amended the charges to add three counts of violation of a no contact order. The State later dismissed the harassment, malicious mischief, and animal cruelty charges when Vinson declined to cooperate with the prosecution.

The State proceeded to trial on one count of fourth degree assault of Vinson and three counts of violation of a no contact order. A jury convicted Curtis of all charges and answered special domestic violence verdicts finding Vinson and Curtis were members of the same family or household for all charges.

KC was 10 years old at the time of Curtis's sentencing and CC was 7 years old. At sentencing, defense counsel emphasized the "very strong" relationship between Curtis and Vinson. 4 VRP at 340. Defense counsel stated, "[I]t's hard to understand [from the] outside looking in, but it's obvious that that relationship is there." *Id.* Counsel requested the trial court impose a drug offender sentencing alternative (DOSA).

Vinson appeared at sentencing and addressed the court, blaming Curtis's drug use for the assault. She emphasized that Curtis had a difficult upbringing and he needed treatment rather than incarceration. Vinson advocated for the court to "please let go of the no-contact order because we're his support." *Id.* at 342. "Our [children] need us both." *Id.* at 343.

The trial court imposed a DOSA sentence of 30 months incarceration followed by 30 months of community custody. The trial court emphasized that it was not unusual for a victim to seek to avoid a protective order, and the court expressed concern for Curtis's children and the impact the domestic violence likely had on KC. The judgment and sentence stated that Curtis "shall not have contact with [the] victim . . . including, but not limited to, personal, verbal, telephonic, written[,] or contact through a third party for 5 years." Clerk's Papers at 85.

The trial court also signed a separate domestic violence no contact order issued under chapter 10.99 RCW barring Curtis from contacting Vinson "directly, indirectly, in person or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers." Suppl. Clerk's Papers (SCP) at 111. The trial court did not expressly restrict Curtis's contact with KC or CC. Curtis did not object to this no contact order or its conditions or file a CrR 7.8 motion.

3

Curtis appeals. He challenges only the sentencing condition and no contact order prohibiting contact with Vinson for five years.

ANALYSIS

A trial court may impose "crime-related prohibitions," including no contact orders, as conditions of a sentence. RCW 9.94A.505(9); *State v. McGuire*, 12 Wn. App. 2d 88, 94-95, 456 P.3d 1193 (2020). "[T]he right to the care, custody, and companionship of one's children constitutes a fundamental constitutional right, so sentencing conditions burdening this right 'must be sensitively imposed.'" *McGuire*, 12 Wn. App. 2d at 95 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010)).

Curtis argues that the sentencing condition and five-year protection order barring contact with Vinson amounted to a manifest constitutional error because the trial court allowed no exception to facilitate Curtis's contact with his minor children. He asserts that the provision allowing contact for legal processes or by attorneys is insufficient to avoid a violation of his fundamental right to parent. He requests that we remand to the trial court to amend the condition to include an exception for contact with Vinson to facilitate contact with the children.

This court may review an unpreserved objection to a sentencing condition raised for the first time on appeal if the condition is a manifest error affecting a constitutional right and the issue is ripe. *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019). "If it is ineligible for review for one reason, we need not consider the other." *Id.* The State contends that Curtis fails to show his claim establishes both manifest constitutional error and ripeness. Specifically, the State asserts that because the no contact order does not impact Curtis's right to parent, Curtis has failed to present a constitutional issue. We agree.

A.        *State v. Phillips*

Chapter 10.99 RCW provides for the protection of victims of domestic violence. *See* RCW 10.99.010. To that end, trial courts may impose no contact orders barring a defendant convicted of an offense involving domestic violence from contacting their victim as a condition of the defendant's sentence. RCW 10.99.050(1). And RCW 10.99.040(7) provides, "All courts shall develop policies and procedures . . . to grant victims a process to modify or rescind a no-contact order issued under this chapter." Similarly, the Sentencing Reform Act of 1981 authorizes trial courts to impose crime-related conditions, including no contact orders prohibiting contact with the victim that may be enforced after completion of the defendant's sentence. RCW 9.94A.505(9), .637(6).

In *State v. Phillips*, the trial court imposed a sentencing condition prohibiting Phillips from contacting his wife for 10 years after he assaulted her in the presence of their infant daughter. 6 Wn. App. 2d 651, 656-57, 431 P.3d 1056 (2018). The trial court did not prohibit contact with the infant and the trial court stated at sentencing that Phillips's relatives could bring the child to see him. *Id.* at 675. The trial court also agreed to the victim's request to revisit the no contact order if Phillips completed an anger management treatment program while incarcerated. *Id.* Under these circumstances, Division One held that the no contact order protecting the victim was within the trial court's discretion and did not violate Phillips's right to parent. *Id.* at 676.

Here, like in *Phillips*, one of the children was present for the defendant's act of violence, the trial court's sentencing condition and no contact order do not prohibit contact with Curtis's children, and Curtis could still contact his children through third parties so long as he does not contact Vinson "directly, indirectly, in person or through others, by phone, mail, or electronic

5

means." SCP at 111; *see Phillips*, 6 Wn. App. 2d at 675-76. Curtis has not established facts in this record that prove he lacks other avenues for maintaining contact with his children. We acknowledge that incarcerated parents experience difficulty maintaining contact with their children, but the order in this case does not prohibit third parties such as family members from delivering letters or facilitating phone calls between Curtis and his children. *See Phillips*, 6 Wn. App. 2d at 675-76. Like in *Phillips*, this record does not show that contact with the children through other family members or third parties is too burdensome or impossible.

Moreover, the law allows Vinson to seek modification or revocation of the no contact order in the future if circumstances change. In accordance with RCW 10.99.040(7), Pierce County has provided a procedure for Vinson to ask the trial court to modify or rescind the order.[1] There may also be other avenues for Curtis to seek modification of the no contact order and sentencing condition, for example through CrR 7.8, should he show significant progress in treatment.

In addition, Curtis could initiate a visitation action in family court to establish a parenting plan without violating the order, even if there is not a dissolution proceeding underway. *See* RCW 26.12.010 ("A family court proceeding under this chapter is: (1) Any proceeding . . . in which the family court is requested to adjudicate or enforce the rights of the parties or their children regarding the determination or modification of parenting plans, child custody, visitation, or support."); *State v. Letourneau*, 100 Wn. App. 424, 443, 997 P.2d 436 (2000) (discussing how family courts are better equipped than criminal courts to handle child visitation matters).

---

[1] *See Instructions: Protected Person's Request to Terminate or Modify a No Contact Order*, Forms (Pierce County Super. Ct. Wash. Oct. 13, 2014) https://www.piercecountywa.gov/ DocumentCenter/View/109746/Criminal---Instructions-to-Modify-or-Terminate-a-NCO.

We hold that the no contact order and sentencing condition at issue here do not demonstrate manifest constitutional error impacting Curtis's fundamental right to parent. Because there is no manifest error affecting a constitutional right, Curtis's claim fails to meet one of the exceptions of RAP 2.5(a) and we need not analyze ripeness. *Peters*, 10 Wn. App. 2d at 583.

B.      Other Cases Curtis Relies On

Curtis primarily relies on three distinguishable cases: *McGuire*, *Letourneau*, and *State v. Ancira*, 107 Wn. App. 650, 27 P.3d 1246 (2001). These cases addressed circumstances and orders that are not comparable to this case.

The no contact order in *McGuire* contained very broad language prohibiting the defendant from contacting the mother of his unborn child, with no exception for contact by counsel or through the court system to allow McGuire to establish his paternity of the child. 12 Wn. App. 2d at 95-96. Here, there is no dispute regarding parentage of the children and the order allows "mailing or service of process of court documents through a third party, or contact by the defendant's lawyers." SCP 111. This case is distinguishable because Curtis retains options for initiating a family court proceeding that the overbroad language of the *McGuire* order prohibited.

In *Letourneau*, a community custody condition of the defendant's sentence prohibited unsupervised contact with all children, including the defendant's own children, even though the defendant's crime did not involve her own children. 100 Wn. App. at 437. Division One reversed the provisions of the judgment and sentence restricting Letourneau's unsupervised contact with her children. *Id.* at 444. And in *Ancira*, the judgment and sentence prohibited the defendant from contacting his wife or their two minor children after the defendant violated a no contact order protecting his wife. 107 Wn. App. at 652. Division One noted that a sentence placing "some

limitations on Ancira's contact with his children . . . might be appropriate" but reversed the order prohibiting all contact with the children. *Id.* at 655. The *Ancira* court noted that even though the children "were directly connected to the circumstances of the crime," this was not a sufficient basis for the no contact order's "extreme degree of interference with fundamental parental rights." *Id*. at 654, 656.

These cases addressed orders that expressly prohibited the defendant from contacting their children and are distinguishable from the order at issue in this case. Here, Curtis's and Vinson's children had repeatedly witnessed the domestic violence that caused the trial court to issue the no contact order to protect Vinson, but the order does not prohibit Curtis from contacting his children. Curtis remains free to indirectly contact his children and may contact Vinson through the family court system to establish visitation with the children. Thus, the order protecting Vinson does not interfere with Curtis's fundamental right to parent.

## CONCLUSION

We affirm Curtis's judgment and sentence and the no contact order.

No. 55331-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, CJ_____
Glasgow, C.J.

We concur:

_Veljacit, J._____
Veljacit, J.

_Price, J._____
Price, J.