# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85852-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| WILMER A. HERNANDEZ-HERNANDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

FELDMAN, J. — Wilmer A. Hernandez-Hernandez appeals his conviction for child molestation in the second degree and challenges three of the community custody conditions imposed by the trial court. We agree with Hernandez-Hernandez that the trial court failed to properly instruct the jury on the child molestation count as required by *State v. Petrich*.[1] Because the State does not argue otherwise, nor does it argue the error was harmless, we reverse the conviction and remand for a new trial on that count but otherwise affirm.

I

Hernandez-Hernandez was charged with rape of a child in the second degree (count 1), child molestation in the second degree (count 2), rape of a child

---

[1] 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled in part on other grounds by *State v. Kitchen*, 110 Wn.2d 403, 406 n. 1, 756 P.2d 105 (1988), abrogated in part on other grounds by *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

in the third degree (counts 3-4), and incest in the first degree (counts 5 and 6) arising out of alleged sexual contact with E.H. starting when she was approximately seven years old and continuing until she was seventeen years old.

At trial, the State presented evidence of multiple acts pertaining to the child molestation count at issue in this appeal, any of which jurors may have independently relied upon to find Hernandez-Hernandez guilty. E.H. testified Hernandez-Hernandez first penetrated her vagina with his finger when her family lived in Everett while she was 11 years old ("a little bit after [she] started sixth grade"). E.H. further testified Hernandez-Hernandez touched, rubbed, and penetrated her vagina with his penis when she was 12 or 13 years old. Lori Moore (a forensic nurse examiner) testified that E.H. described these events to her during an exam in 2014. E.H. also testified Hernandez-Hernandez performed oral sex on her at the Everett house, and Moore testified that E.H. reported this conduct to her when she was 13 years old. Despite this evidence of multiple instances of child molestation, no *Petrich* instruction was given as to the child molestation count and the State did not make a *Petrich* election in closing argument.[2]

The jury found Hernandez-Hernandez guilty of child molestation in the second degree (count 2) and both counts of incest in the first degree (counts 5 and 6). He was acquitted of the other charges. At sentencing, the trial court ordered

---

[2] We discuss *Petrich* instructions in section II below. While there is also evidence of other alleged sexual contact, this opinion does not detail that conduct because (a) the evidence discussed in the text above is sufficient to show that this case falls under the "multiple acts" line of cases and (b) the testimony does not consistently assign specific dates to many of the alleged acts so it is unclear whether they fall within the relevant charging period for the child molestation count. We express no opinion as to whether such additional acts are relevant and admissible to prove child molestation on remand.

community custody with conditions to (1) "stay out of areas where children's activities regularly occur or are occurring," including "church services" and "restaurants," (2) obtain prior approval for "sexual contact in a relationship," and (3) "not remain overnight in a residence where minor children live or are spending the night." This timely appeal followed.

II

Hernandez-Hernandez argues the trial court erred in failing to give a *Petrich* instruction regarding count 2 (the child molestation count) and, therefore, he is entitled to reversal and a new trial on that count. We agree.

Under both the United States and Washington Constitutions, a defendant may not be convicted unless a unanimous jury concludes that the criminal act charged in the information has been committed. *Ramos v. Louisiana*, 590 U.S. 83, 92, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); *Petrich*, 101 Wn. 2d at 569. When the State charges a count of criminal conduct and presents evidence of more than one criminal act for that charge, there is a danger that a conviction may not be based on a unanimous jury finding that the defendant committed any given single criminal act. *State v. Kitchen*, 110 Wn. 2d 403, 411, 756 P.2d 105 (1988). In such cases, the jurors must be instructed that they be unanimous in deciding that the same underlying criminal act has been proved beyond a reasonable doubt (often referred to as a *Petrich* instruction) unless the State elects a single act on which it will rely for conviction. *Petrich*, 101 Wn. 2d at 572.

Although Hernandez-Hernandez did not object to the trial court's failure to provide a *Petrich* instruction regarding count 2 when the State initially proposed its

instructions or when the State failed in its closing argument to elect a single act on which it would rely for conviction, Hernandez-Hernandez argues, and the State does not dispute, that "the right to a unanimous verdict is a fundamental constitutional right and may, therefore, be raised for the first time on appeal." *State v. Holland*, 77 Wn. App. 420, 424, 891 P.2d 49 (1995). Nor does the State dispute, as Hernandez-Hernandez principally argues, that the trial court prejudicially erred in failing to give a *Petrich* instruction as to count 2. *See State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990) ("When [a *Petrich*] error occurs during a trial the jury verdict will be affirmed only if that error was harmless beyond a reasonable doubt.") (citing *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Kitchen,* 110 Wn. 2d at 409).

Rather than contest these issues, the State argues defense counsel invited error by "affirmatively assent[ing]" to the State's instructions and therefore cannot challenge the instructions on appeal. The State notes that after defense counsel received the State's jury instruction packet, which included a *Petrich* instruction for counts 3-6 but not counts 1 or 2, defense counsel stated, "I don't have any exceptions or objections to the proposed packet . . . I'm just checking 4.25, which I think is the *Petrich*. Yes, I think that that covers it." According to the State, this "affirmative assent" satisfies the invited error doctrine.

The State's argument is not persuasive. "The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). In determining whether the invited error doctrine

applies, courts consider "whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it." *In re Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (plurality opinion). Thus, invited error may be established where that defendant "affirmatively opposed the trial court's giving the jury a *Petrich* unanimity instruction," *State v. Carson*, 179 Wn. App 961, 975, 320 P.3d 185 (2014), or "proposed the erroneous instruction." *City of Seattle v. Patu*, 147 Wn. 2d 717, 720, 58 P.3d 273 (2002).

Here, however, Hernandez-Hernandez did not oppose a *Petrich* instruction for count 2. And it was the State, not Hernandez-Hernandez, that proposed the jury instructions used at trial. Instead, defense counsel's conduct in this case is analogous to *Coggin*, where the plurality opinion rejected the argument that Coggin invited error "by merely assenting to the State's juror questionnaire." 182 Wn.2d at 119. Although defense counsel here noted "I don't have any exceptions or objections to the proposed packet" and "I think that that covers it," mere acquiescence to the State's proposed instructions, without more, is not tantamount to "setting up" the error such that any challenge to the error is barred under the invited error doctrine. The State's invited error argument thus fails.

In sum, we reverse the conviction on count 2 and remand for a new trial on that count.

### III

Hernandez-Hernandez challenges three community custody conditions imposed at sentencing. Because these conditions are independently premised on the incest convictions, which Hernandez-Hernandez does not challenge on

appeal, we address his arguments regarding these three conditions notwithstanding our decision regarding the child molestation count above.

A

Hernandez-Hernandez challenges the following community custody condition imposed at sentencing:

> Stay out of areas where children's activities regularly occur or are occurring. This includes but is not limited to: parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, church services, restaurants, and any specific location identified in advance by [the Department of Corrections] or [community corrections officer].

Hernandez-Hernandez claims this condition is unconstitutionally vague.[3] His argument is unpersuasive.

A community custody condition is unconstitutionally vague under due process principles of the Fourteenth Amendment to the United States Constitution and article I, section 3, of the Washington Constitution "'if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement.'" *State v. Wallmuller*, 194 Wn. 2d 234, 238-39, 449

---

[3] Hernandez-Hernandez also asserts the condition is flawed because it "touches on constitutionally protected religious activity." A community custody condition that burdens the free exercise of religion "must withstand strict scrutiny." *State v. Balzer*, 91 Wn. App. 44, 53, 954 P.2d 931 (1998). "Under this standard, the complaining party must first prove the government action has a coercive effect on his or her practice of religion." *Balzer*, 91 Wn. App. at 53. Hernandez-Hernandez does not argue or point to any evidence that the condition has a coercive effect on his practice of religion. Because of the limited briefing and undeveloped record, we decline to address the question of whether this condition unconstitutionally burdens Hernandez-Hernandez's freedom of religion. *See Bittner v. Symetra Nat'l Life Ins. Co.*, 32 Wn. App. 2d 647, 672, 558 P.3d 177 (2024) ("we decline to address whether the trial court erroneously dismissed Bittner's disparate treatment claim because Bittner fails to sufficiently brief that issue as required by RAP 10.3(a)(6)").

P.3d 619 (2019) (quoting *State v. Padilla*, 190 Wn. 2d 672, 677, 416 P.3d 712 (2018)).  "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional questions de novo."  *Id.* at 238.

Wallmuller is instructive on this point.  There, our Supreme Court determined a community custody condition similar to the one imposed on Hernandez-Hernandez was not unconstitutionally vague.  That condition provided, "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls."  *Id.* at 237.  The court reasoned that "commonsense" restrictions, including those that use nonexclusive lists to elucidate general phrases like "where children congregate," provide fair notice of prohibited conduct.  *Id.* at 242-43.  Much like the condition in *Wallmuller*, the condition here uses a nonexclusive list to illustrate the general phrase "areas where children's activities regularly occur or are occurring." That phrase is no less precise than "places where children congregate" as addressed in *Wallmuller*.  The language here sufficiently defines the proscribed conduct so an ordinary person can understand the prohibition.

Hernandez-Hernandez asserts that the "illustrative list" is "confusing" because it includes some "child-specific" locations like schools and some "not child-specific" locations like parks and only some of the "not child-specific" locations are expressly modified by the language "used for youth activities."  But the first sentence modifies the entire illustrative list and eliminates any ambiguity; the locations are limited to "areas where children's activities regularly occur or are

occurring." Furthermore, the condition the Supreme Court upheld in *Wallmuller* also included areas not exclusively used for children's activities, such as shopping malls. 194 Wn.2d at 237. Like the condition at issue in *Wallmuller*, the condition here is not unconstitutionally vague.

B

The trial court also imposed a condition that "sexual contact in a relationship is prohibited until the treatment provider/Community Corrections Officer approves of such." Hernandez-Hernandez argues this condition is not crime-related and should therefore be stricken or modified. Washington case law does not support his argument.

RCW 9.94A.703(3)(f) gives trial courts discretion to order "crime-related" conditions in addition to statutory community custody provisions. When a condition prohibiting sexual contact in a relationship without prior approval is imposed on a sex offender, together with the requirement for a sexual deviancy evaluation, the condition is considered "crime-related." *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 62-63, 469 P.3d 322 (2020) (explaining, "[r]easonably read, [the condition] requires that he not have sexual contact until his treatment provider is satisfied that sexual contact does not put others at risk. It is not a total ban on protected activity and can be challenged as applied in the event the treatment provider's approval is exercised unreasonably" (internal quotation marks omitted)). The imposition of crime-related prohibitions is reviewed under an abuse of discretion standard. *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001).

Like the defendant in *Sickels*, Hernandez-Hernandez was ordered to undergo an evaluation for treatment for sexual deviancy. The challenged portion of the community custody provision is consistent with the condition in *Sickels* which provided "sexual contact in a relationship is prohibited until the treatment provider approves of such." 14 Wn. App. 2d at 60. Since the condition to obtain prior approval for sexual contact in a relationship is imposed together with the requirement of sexual deviancy evaluation and treatment, it is crime-related. Because Washington law allows community custody conditions to be imposed where they are crime-related, the trial court did not abuse its discretion in imposing this condition.

C

Lastly, the trial court imposed a condition that Hernandez-Hernandez not "remain overnight in a residence where minor children live or are spending the night." Hernandez-Hernandez argues the court's failure to exclude Hernandez-Hernandez's children and grandchildren from this condition was an oversight. His argument is unconvincing.

Although "[a] parent has a constitutionally protected fundamental right to raise children without State interference . . . a sentencing court may impose limitations on this right when reasonably necessary to further the State's compelling interest in protecting children." *State v. Berg*, 147 Wn. App. 923, 942, 198 P.3d 529 (2008). Here, the trial court expressly considered and decided at the sentencing hearing whether to exclude Hernandez-Hernandez's children and grandchildren from an unchallenged prohibition on unsupervised contact with

minors, stating "[w]ith regards to No. 14 . . . I am going to allow for . . . his children . . . to be able to be with him."[4]  Condition 14 thus includes the handwritten notation, "this shall not apply to his own children or grandchildren."  Then, immediately after addressing this issue with regard to condition 14, the trial court stated it was imposing the condition at issue here (condition 18), which did not include the same exclusion.  The record is thus clear the trial court considered Hernandez-Hernandez's parenting rights with regard to the proposed community custody provisions allowing for unsupervised contact with his own children (in condition 14) and deliberately decided to impose the remaining conditions, including the one challenged here, without the exclusion for his own children.

Such a conclusion appropriately reflects both the consideration of Hernandez-Hernandez's parental rights and the trial court's assessment of a risk of incest during overnight stays.  *See State v. Letourneau*, 100 Wn. App. 424, 442, 997 P.2d 436 (2000) ("There must be an affirmative showing that the offender . . . poses the danger of sexual molestation of his or her own biological children to justify such State intervention.").  Hernandez-Hernandez was living in his family home with his wife, her two children from a previous relationship (A.H. and E.H.), and their own minor daughters when the incest for which he was convicted occurred.  By allowing Hernandez-Hernandez to remain overnight in a residence where his other daughters lived, the court reasonably feared that it would be putting them in the same situation that E.H. was in when Hernandez-Hernandez

---

[4] Condition 14 states, "Do not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising Community Corrections Officer."  The trial court also added, "This shall not apply to his own children or grandchildren."

sexually abused her.  Thus, the trial court's order restricting Hernandez-Hernandez from remaining overnight where minor children live, inclusive of his own children, was reasonably necessary to further the State's compelling interest in protecting other similarly-situated children in the home.  There was no abuse of discretion.

Reversed in part, affirmed in part.

_Feldman, J._

WE CONCUR:

_Díaz, J._

_Birk, J._

- 11 -